BAKER *v.* SUPREME LODGE KNIGHTS OF PYTHIAS.

[60 South. 333.]

1. INSURANCE. *Life policy.    Duel.    Death as result of violation of criminal law.    Definition.*

   A duel "is the fighting together of two persons by previous concert with deadly weapons to settle some antecedent quarrel," and has none of the elements of sudden heat and passion. *Held,* that the transaction as shown by the evidence in this case was not a duel, within the terms of a policy limiting insurers liability under a life policy, in case the insured died as a result of a duel.

2. INSURANCE. *Life policy.    Death as result of violation of criminal law.*

   Under a policy of life insurance, providing that, "if the death of the member be caused or superinduced by the violation or attempted violation of any criminal law, the amount to be paid should be abated," in order that the death of an assured may be said to have been caused, or superinduced in the violation or attempted violation of a criminal law within the meaning of this clause of the insurance policy, it must appear that his act bore such relation to his death that the latter would not have occurred at the time and place, if assured had not been engaged in violating the law.

3. SAME.

   Where the insurer attempts to defend under this clause of its policy on the ground that deceased at the time of his death was carrying a deadly weapon concealed, the burden is on the insurer to show that such carrying of a concealed deadly weapon was done unlawfully, as under some circumstances it is lawful to carry concealed a deadly weapon.

4. LIFE INSURANCE. *Voluntary engaging in difficulty.*

   Whether or not under the facts in this case assured voluntarily engaged in the fight which resulted in his death was a question for the jury.

APPEAL from the circuit court of Panola county.

HON. N. A. TAYLOR, Judge.

Suit by Mrs. Lily Baker against the Supreme Lodge of the Knights of Pythias. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Shands & Montgomery*, for appellant.

The only question before this court now is, was the trial court warranted in charging the jury as a matter of law upon the record made, that deceased's, Baker's, death was caused or superinduced in consequence of a duel, in which he was a participant?

We say not, because of the total absence in the evidence of the circumstances surrounding the combat in which Baker lost his life, of those peculiarities which distinguish a duel within the meaning of the criminal laws of the land and within the contemplation of the insurance contract here sued on, and a common fight or brawl. The word duel within the meaning of the criminal laws has a distinct, definite meaning. Every combat in which two persons participate is a duel in the sense that it is bilateral; but very few fights in which two persons engage, of which our criminal courts take cognizance, are duels in a judicial sense. To constitute a duel there must be more than a fight in which two men engage; there must be "a combat with deadly weapons, fought between two or more persons, by previous agreement or upon a previous quarrel." Black's Law Dictionary, p. 399. "A duel is a combat with deadly weapons, fought according to the terms of a precedent agreement, and under certain agreed or prescribed rules, and has none of the elements of sudden heat and passion." 13 Current Law, p. 1374. "The word 'duel' as it appears in the present contract (being a policy of insurance similar to the one sued on) was used in its ordinary signification, and with the meaning which

is ordinarily attached to the term; that is, a combat with deadly weapons between two persons by some prearrangement and understanding, and perhaps with some formality." *Davis* v. *Modern Woodmen of America*, 98 Mo. 713, 73 S. W. 923.

We quote elaborately from the definition of the word duel as it is used in the criminal laws, as found in the opinion of the court in the case of *Ward* v. *Commonwealth*, 116 S. W. 786.

This was no duel. Duels are made of different stuff. The whole transaction differs in no way from a common, "ordinary vulgar fight and brawl that sprung up and was carried on under the influence of sudden heat and passion." There was no deliberation, no time for passion to subside and sober reason to return, no time for the intervention of friends, and no sort of formality and decorum which characterizes a duel. There was never any challenge on the part of Baker to fight a duel. Without a challenge to fight a duel and an acceptance thereof, there can be no duel.

There were no agreed or prescribed rules by which the encounter between Lester and Baker was to be conducted, and none were observed. There was nothing in the world but the drawing of pistols by two angry men, and a killing of the one by the other. Indeed if it could be contended that there was an agreement to fight a duel, the agreement was abandoned, the encounter was never conducted according to the agreement; but on the other hand Baker was actually killed before the time alleged to have been agreed upon, viz., when he should have gone to his cash drawer and secured his own pistol.

The learned trial judge should have charged the jury that the evidence did not warrant them in finding that Baker's death was caused or superinduced in consequence of a duel in which he was a participant. *Ward* v. *Commonwealth* (Ky.), 116 S. W. 786; Black's Law Dictionary p. 399; 13 Current Law, p. 1374; *Davis* v. *Modern Woodmen of America*, 98 Mo. 713, 73 S. W. 923.

In no event was the trial court warranted under the evidence, in declaring as a matter of law that Baker's death was caused or superinduced in consequence of a duel in which he was a participant. In granting a peremptory instruction, the court assumes as true all testimony tending to establish the issue in favor of the losing party; if there was any evidence sufficient to warrant a verdict for the appellant on the trial of this case in the court below, in any view of which it might have been legally taken, a peremptory instruction in favor of appellee should not have been given, but the case should have been submitted to the jury with proper instructions. *Railroad Co.* v. *Boehms*, 70 Miss. 11; *Holmes* v. *Simon*, 71 Miss. 245; *Tribette* v. *Railroad Co.*, 71 Miss. 212.

If there was any evidence supporting or tending to support the contention upon which the jury might have found for appellant on the trial below, the case should have been submitted to the jury. *Lowenstein* v. *Powell*, 68 Miss. 73.

A motion to exclude the evidence and instruct for defendant should be sustained only where a verdict for plaintiff, if one were rendered, would have to be set aside as unwarranted. *Anderson* v. *Telephone Co.*, 86 Miss. 341.

The burden of proof was upon appellant, defendant below, to show that the death of Baker was due to such cause as relieved appellee from liability by the express terms of the policy. *Tallis* v. *U. S. Mutual Acct. Assn.*, 58 A. S. R. 408; *Smith* v. *Aetna Life Ins. Co.*, 91 A. S. R. 153; *Anthony* v. *Acct. Assn.*, 44 A. S. R. 367; *Cronkhite* v. *Travelers Ins. Co.*, 17 A. S. R. 184, and notes; *Meadows* v. *Pac. Mut. Life Ins. Co.*, 50 A. S. R. 427 and notes.

It certainly will not be contended in this case by appellee that the evidence shows anything like a formal or premeditated duel—that Baker issued a formal challenge and that it was formally accepted by Lester.

It must be clear that Baker himself never intended the language made use of by him as a challenge to fight

a duel, as his utterance was based upon a false premise, viz., that his pistol was in his cash drawer, when in fact his pistol was at the very moment on his person.

It is equally clear that Lester never understood and considered his language as a challenge to fight a duel, for he shot him down and killed him before he had gotten half way to his cash drawer.   Certainly this is a question which should have been submitted to the jury under proper instructions.   Indeed this is always a question for a jury.

"Whether the alleged challenge under all the circumstances of the case was intended as, or amounted to, a duel is always a question for the jury."     14 Cyc. 1116, par. F; *Com.* v. *Hart*, 6 J. J. Marsh (Ky.), 119; *Com.* v. *Hooper*, Thach. Cr. Cases (Mass.),  400; *Norton's case*, 3 City Hall Rec. (N. Y.) 90; *Com.* v. *Pope*, 3 Dana (Ky.), 418.

"Whether a challenge to fight in single combat with deadly weapons was intended, or whether it was the mere effusion of passion or folly, or the idle boast of a braggart, not intended at the time to lead to any result or to  be understood by the other party to be a challenge to fight a duel, are questions which the jury must determine." *Ivey* v. *State*, 12 Ala. 276; *State* v. *Strickland*, 2 Nott. & M. (S. C.) 181; *Com.* v. *Tibbs*, 1 Dana (Ky.), 524.

"Whether the language used amounts to a challenge or not is a question to be determined by the jury upon a consideration of all the facts in the case." 10 Am. & Eng. Ency. of Law, p. 313, par. 2.

"The circumstances attending a fighting with pistols, and the intention of the parties, are questions of fact to be left to the jury."     *Herriott* v. *State*, 1 McMull. L. (S. C.) 126.

"It is for the jury to decide whether or not there was a challenge."   2 Bishop's New Crim. Procedure, p. 133, par. 309.

"In a prosecution for challenging another to fight a duel if there is any doubt as to whether accused intended

to challenge to fight a duel, the question is ordinarily for the jury." *Ward* v. *Com.* (Ky.), 116 S. W. 786.

*L. F. Rainwater*, for appellee.

No extended preliminaries are required in order to fight a duel. If it is a combat between two persons by agree ment, it is a duel. There need be no formal challenge, nor formal acceptance. A mere agreement to fight is the only preliminary required. This court, in the case of *Thomas* v. *State*, 61 Miss. 60, defines what it takes to con- stitute a duel. In that case the defendant testified: "That as soon as he recognized the deceased, he drew his pistol from his hip pocket, placed it in the linen duster coat which he was wearing, rose from his seat, advanced to- wards the deceased until he was in a few feet of him, and then, halting behind a little and to the left of him, said, 'Now I am ready for you to shoot.'" Deceased instantly rose from his seat throwing his hand behind or to his side as he did so, and the defendant at once fired. The court on page 66 says: "I am ready for you to shoot", was a challenge to fight with deadly weapons, an impromptu duel.

There was much more preliminary conduct in the case at bar than in the one cited *supra*. Here there was a challenge by the deceased and an acceptance by the slayer, either in words or by implication as clearly demonstrated by the subsequent events, and the conduct of the parties at the time immediately following the challenge.

In South Carolina, under a statute on the subject of duelling, the supreme court held "that any agreement to fight with loaded pistols and an actual fighting in pur- suance of it, is a duel." *Herriott* v. *State*, 1 McMullan, 126.

Mr. Bishop in his admirable work on Criminal Law, after reviewing the decisions says: "On the whole, therefore, a duel may be defined to be fighting together,

by two or more persons, on such mutual agreement as permits one to take the life of another in the encounter." 2 Bishop on Criminal Law (5 Ed.), p. 314.

"Dueling is the act of fighting with deadly weapons between two persons in pursuance of . a previous agreement." This is the definition given in 14 Cyc. 1112.

Counsel for plaintiff in their brief say: "The only defense interposed on the trial of this case in the court below, was that the deceased, Baker, came to his death in consequence of a duel." I do not know· in what way counsel came to fall into this error, except it be that the trial judge in rendering his opinion upon the argument for a peremptory instruction, stated that the facts as testified to by the witnesses, constituted a duel and predicated the peremptory instruction upon that and did not allude to the other grounds upon which the defendant denied plaintiff's right to recover, and which were fully argued upon the motion for a peremptory instruction. There was no abandonment of the other condition in the policy, viz., the violation, or attempted violation of a criminal law. The language of the condition is caused or superinduced by the violation or attempted violation of a criminal law.

While it is true that policies of insurance must be strictly construed as against the insurer and in favor of the assured, yet the language of the policy and its condition must receive a fair and reasonable construction. The Knights of Pythias might, if they had seen proper to do so, have issued their policy on the life of Baker without any conditions, but they had a perfect legal right to impose conditions and restrictions, and Baker, having accepted the policy with . these conditions and restrictions, could not, and his widow, who stands in the same attitude, could not, now claim exemption from their operation.

The word superinduced in the policy has a much broader and more comprehensive meaning than the words "caused by." It means to lead up to, or bring in over

and beyond something else; the *causa causans* of the final culmination.   It is conceded. that the act which is set up as defense under this condition of the policy must have some relation to the death—must be the superinducing cause of the death, but the act need not be the immediate cause of the death.   To illustrate:  If the assured engages in an affray, or does any act which leads to an affray, and as a result of the affray is killed, the death is superinduced by the act which led up to the affray, and under a condition of the policy like the one at bar, his beneficiary could not recover.   He may have engaged in the affray unwillingly, but if he did an act which brought on the affray, or fight, which ended in his death, then the fight or affray caused the death, and the fight was superinduced by the act which brought it on.   Thus the word "superinduced" reaches back to an act preceding the immediate cause.

In this connection I desire to call the attention of the court to the case of *Mattie E. Greesham* v. *Equitable Life & Accident Insurance Co.*, 13 L. R. A. 838, decided by the supreme court of Georgia, July, 1891, affirming a decision of the trial court in which a mandatory nonsuit was ordered against the plaintiff.

This was an accident policy and covered bodidly injuries inflicted by external, violent and accidental means. It excepted however certain injuries among which were those caused by dueling, fighting, wrestling, or while engaged in, "or. in consequence of, any unlawful act." The facts were:   The deceased and his slayer were in the same room some twenty feet apart when the slayer spoke abusively of secret societies and their members, referring to them in general terms; no particular society or member being mentioned.   Shortly afterwards, as the speaker was passing by the insured, the latter, without rising from his seat, said to him mildly, in a tone of mortified resentment:   "I heard all you said about secret societies; that no gentleman would belong to a secret so-

ciety." The slayer answered: "Yes I said it, and by God, it is true. Do you want to take it up?" The insured replied: "Well, it's a lie", or "a damned lie," "yes, I do." A blow was struck and the deceased tumbled off his seat. The insured was struck several times with a walking cane, while the insured struck back but but did not hit his antagonist. The deceased then walked back to get his hat, when the other combatant without changing his position shot and killed deceased. The first insult came from the slayer, attended with a challenge to fight, says the court. It does not appear that the deceased ever struck a blow. He was not armed. The court in rendering the opinion says: "No doubt he (meaning the deceased) was under the influence of strong passion, but this is no excuse for him in the present litigation. The fighting was in a public place to which a portion of the public habitually resorted."

"The fight merely as such, was a joint offense, and would be classified under our Code as an affray." It was not necessary that Baker in the case at bar struck a blow or fired a shot, in order to constitute an affray. Any fighting in a public place, or in a place where a part of the public habitually resort, is an affray, and when two persons agree to fight, or engage in a fight by mutual consent, it is an indictable offense although one may knock or shoot the other down without a blow being struck by the other. Both are guilty of an affray. See case cited ante.

The case of *Duran* v. *Standard Life & Accident Insurance Co.*, 13 L. R. A. 637, was a suit upon a policy, having a clause similar to the one at bar. Among other causes which would avoid the policy was any injury resulting from "a violation of law." The plaintiff brought suit on two accident policies, both having the above quoted clause, for an injury to his knee sustained by him on Sunday, January 20, 1889. The plaintiff and another about nine o'clock on that day took guns and ammunition and set

out from Burlington on foot for Colchester on a hunting expedition. They traveled on the highway six or seven miles and then took dinner with a Mr. Choates. After dinner they went hunting. After hunting a while they started across a field toward the highway on their way home; and were thus walking when plaintiff slipped and was injured. The statute of Vermont prohibits traveling on Sunday except from necessity or charity, or for moral or religious edification. It also prohibits hunting on Sunday. The supreme court of Vermont held the policies void on both grounds, and reversed the judgment of the trial court and entered judgment for the defendant.

In *Insurance Co.* v. *Seavor*, 19 Wallace (U. S. Law Ed.), 541, the facts were that Seavor, the insured, was driving a race for money with one Gilmore. That Seavor's sulky collided with Gilmore's and Seavor jumped from his sulkey to the ground uninjured, two or three feet from his sulkey and entirely free from it. That he instantly spoke to his mare, and she slackened her speed, and that Seavor tried to catch her and ran some twenty feet by her side with the lines and was dragged along a few feet when his head struck a stone and he was killed. He held a policy in the Travelers' Insurance Company of Hartford, which contained a condition that the liability of the company should not extend to death or injury caused by dueling or fighting, or other breach of the law on the part of the assured. The statute of Vermont prohibited racing for money, and the defense was made under this statute and that Seavor's injury occurred while violating it. Plaintiff sought to avoid the application of the statute on the ground that the injury did not occur during the race or on account of it, but from an independent cause, viz., by Seavor's effort to catch his mare after the race was over, and that the cause of death was too remote from the racing to bring it within the terms of the policy. It was also sought to avoid the effect of this condition of the policy on the ground that Gilmore in trying to get

an advantage by taking the inside track away from Seavor caused the collision and the consequent death of Seavor and therefore the racing was not the proximate cause of the injury, and the trial court gave an instruction to this effect, which the supreme court held was error and the case was reversed.

In this connection I desire to specially call the attention of the court to the case of *Murray* v. *New York Life Insurance Co.*, 96 N. Y. 614, and also reported in 48 Am. Rep. 658. Wisner Murray held policies of Life insurance in the New York Company each containing a condition that if the assured "shall die in, or in consequence of, a duel, or the violation of the laws of any nation, state or province," the policy shall be void. The assured died from a pistol shot in the hands of one Burdell, upon whom the deceased and his brother had committed an assault.

After the assault and while Spencer Murray, one of the brothers was holding Burdell, Wisner Murray, the deceased, had abandoned the difficulty and was retreating, had jumped over the lunch counter and was passing through a door into another room when Burdell's pistol was discharged, killing him. A pistol was found about thirty feet from the place where the deceased fell, and Burdell testified that while the deceased was retreating he had a pistol pointing as if aiming at him. He also testified that the discharge of his pistol was accidental.

The insurance company defended on the ground that the death occurred while deceased was violating the law under that condition of the policy, and the supreme court in affirming a judgment for defendant says: "It is sufficient to bring a case within the condition, if there is such a relation between the act and the death that the latter would not have occurred at the time if the deceased had not been engaged in the violation of the law."

Baker violated the law when he drew and pointed his gun at Lester. It was this act that caused his death. No words, however insulting, justified Baker in the use

of a deadly weapon.    I think that under the evidence in this case that we may safely assume, that if Baker had not violated the law in carrying upon his person a concealed pistol, the tragedy would never have occurred, and that the carrying of the pistol bore an ancestral relation to the final culmination of the homicide, and in the language of the condition of the policy superinduced the tragedy.

He also violated the law when he issued his challenge to Lester to "shoot it out," Code 1906, sec. 1114; and in exhibiting a deadly weapon in a rude, angry and threatening manner, Code, sec. 1110; and in fighting in a town in a public place, see Code, sec. 1119; all of which was a part of the *res gestae* and "superinduced" the homicide. 13 L. R. A. 838; 13 L. R. A. 637; 48 Am. Dec. 658; 96 New York, 614; 120 Mass. 550; 19 Wallace U. S. 533; 6 Am. Rep. 115; 13 Allen (Mass.), 318; 19 Mo. 500; 39 Mo. 122; 45 N. Y. 422.

The evidence was without conflict.    There was no question of fact for a jury to pass upon and the peremptory instruction was proper.

SMITH, C. J., delivered the opinion of the court.

The husband of appellant, who was killed some time prior to the institution of this suit, was a member of appellee order, and at the time of his death his life was insured therein in favor of appellant for the sum of two thousand dollars.    This policy provided, among other things, that "If the death of the member.  .  .  be caused or superinduced  .  .  .  in consequence of a duel, or at the hands of justice, or in violation or attempted violation of any criminal law, then the amount to be paid on this certificate shall be a sum only in proportion to the whole amount thereof as the member's matured life expectancy is to his entire expectancy at the date of this certificate; the expectation of life based upon the American Experi-

ence Table of Mortality to govern." Appellee having denied liability on the policy, this suit was instituted in the court below; and the defense of appellee thereto is that the death of appellant's husband was caused or superinduced in consequence of a duel, and in the violation or attempted violation of a criminal law. At the close of the evidence, upon request of appellee, the court instructed "the jury to find for the plaintiff the sum of seventy-two dollars and fifty-two cents, and six per cent interest thereon from May 23, 1911, to this date." Appellant, being dissatisfied with the verdict and judgment entered in accordance with this instruction, appeals to this court.

It appears from the evidence that on the 23d day of May, 1911, a man named Lester came to Baker's place of business in the town of Batesville, and asked him if he (Baker) had killed his (Lester's) dog. Baker replied that he had, but that it was done accidentally, whereupon Lester proceeded to curse and abuse him, applying to him several vile and vulgar epithers. Baker was sitting down at the time, and Lester, according to the evidence of one of the witnesses, told him that if he moved he would kill him. Baker told Lester that he was unarmed, but that if he (Lester) would put down his gun he would whip him with his fists, which proposition not being accepted by Lester, who continued to abuse him, he then said, "If you will let me get to my cash drawer, I will shoot it out with you; get sixteen steps apart and shoot it out." Lester had not drawn his pistol at this time, but it was evident to Baker that he had one, and would use it, if necessary. Lester finally permitted Baker to get up from the chair in which he was sitting, and go towards his cash drawer. Before reaching this cash drawer, Baker drew a pistol from his bosom and turned towards Lester with it in his hand. Exactly in what position he held it does not definitely appear from the evidence. Whereupon he was shot and killed by Lester.

A duel, as the term is ordinarily understood, and as used in this policy, "is the fighting together of two persons by previous concert with deadly weapons to settle some antecedent quarrel," and has none of the elements of sudden heat and passion. 2 Bishop's Criminal Law (8 Ed.) 313; Black's Law Dictionary, page 399; Century Dictionary Encyclopedia, vol. 3, page 1792; *Davis* v. *Modern Woodmen*, 98 Mo. App. 713, 73 S. W. 923; *Ward* v. *Commonwealth*, 132 Ky. 636, 116 S. W. 786, 19 Ann. Cas. 71. The fight, if such it was, in which Baker lost his life, had none of the elements of a duel as thus defined, but was brought about without premeditation on his part by the acts and words of Lester. Nothing said in *Thomas* v. *State*, 61 Miss. 60, is in conflict herewith. The court in that case was not dealing with a duel in the common acceptation of the term.

But it is said, in effect, that, granting that Baker's death was not the result of a duel, still it was caused or superinduced in the violation or attempted violation of a criminal law: First, because it would not have occurred, had he not at the time had on his person a concealed weapon; and, second, because it occurred in a fight in which he had voluntarily engaged. In order that the death of an assured may be said to have been caused or superinduced in the violation or attempted violation of a criminal law within the meaning of this clause of an insurance policy, it must appear that his act bore such relation to his death that the latter would not have occurred at the time and place, if the assured had not been engaged in violating the law.

Granting, for the sake of the argument, that it can be said that the fact that the pistol which Baker had upon his person was concealed had such effect upon his or Lester's conduct as without it his death would not have occurred, it does not appear that in carrying the pistol concealed he was violating the law. He had the right to carry it concealed under certain circumstances. The

burden of showing that he was carrying it concealed unlawfully was upon the appellant; but upon this point the record is silent, nothing appearing relative thereto, except the mere fact that he had the pistol concealed about his person.

On the evidence, whether or not Baker voluntarily engaged in a fight, if such it may be called, which resulted in his death, was a question of fact for the jury, and not of law for the court. It may be that in doing what he did he was simply trying to get upon even terms with a man who was forcing him, at the point of a pistol, to submit to a very great indignity.

*Reversed and remanded.*