# FLOYD v. MISSOURI STATE LIFE INS. CO. et al. (two cases).

## Nos. 7828, 7829.

District Court, D. Mississippi, Jackson Division.

Sept. 12, 1935.

Howie & Howie, of Jackson, Miss., for the Floyds.

Wells, Wells & Lipscomb, of Jackson, Miss., for the Insurance Companies.

HOLMES, District Judge.

These two actions at law involving the provisions of two life insurance policies, identical in language so far as the issues herein are concerned, were consolidated for the purpose of trial. After a verdict and judgment were rendered in favor of the plaintiffs, the defendants presented motions for a new trial, which were argued together and have been elaborately briefed. The plaintiffs are daughters of the insured, C. N. Floyd, who died as the result of a gunshot wound while the policies were in full force and effect. Each policy contained a provision for double liability upon due proof that the death of the insured resulted "in consequence of bodily injury effected solely through violent, external, and accidental means." That the cause of death was

1002

violent and external is undisputed, but defendants deny that it was accidental. They insist that there was no issue to be submitted to the jury as to the accidental character of the death, claiming: (a) That the insured was in the act of committing a deadly assault upon Dave Gray, when he was shot and killed by the latter, who acted in self-defense; (b) that the insured at such time and place was in the act of committing an aggravated trespass when he met his death; and (c) that the insured was violating the law in carrying concealed upon his person a deadly weapon when, as a result thereof, death overtook him at the hands of Gray.

There was only one eyewitness to the actual facts which occurred at the time Floyd was killed. This was the aforesaid Gray, who was then under indictment for the murder of the insured. His testimony made out a case of self-defense. The contention of the defendant is that this uncontradicted testimony overcame the prima facie case of the plaintiffs, and, because there was no other eyewitness, the court should have given a peremptory instruction to the jury to return a verdict for the defendants. I do not take this view of the case. Other witnesses were called who testified to facts and circumstances which warranted the jury in rejecting the testimony of Gray, in whole or in part.

From their verdict it is fair to conclude that the jury believed the facts to be as alleged by the plaintiffs. The findings involved in this verdict are not subject to just criticism. They were well warranted by the wounds in the back of the deceased, "dumb mouths" that speak in trumpet tones of the manner of his taking off; by the position of the dead body, when first found, hanging head downward over the back end of the wagon; by the rebuttal testimony of the plaintiffs that the deceased was unarmed; by the distance of some forty or fifty feet between the principal parties at the time of the shooting; by the inherent weaknesses and contradictions in Gray's testimony; and by his vital interest in the case against him which necessarily would be determined upon the same salient facts at issue.

In the case of Mutual Life Ins. Co. of New York v. Sargent (C. C. A. 5) 51 F. (2d) 4, 5, the court said:

"That death is none the less accidental, within the terms of a policy like the one in suit, because of the fact that it results from the intentional act of another, if the insured is innocent of aggression or wrongdoing, or even if he is the aggressor, if he could not reasonably anticipate bodily injury resulting in death to himself at the hands of another. * * * If, however, defendant makes proof that the death occurred as the result of an affray or an encounter, then it is incumbent upon the deceased to take the initiative again and show by other evidence that the death was accidental. * * * And this can be accomplished by showing that the insured was not the aggressor or if he was the aggressor, that he could not in the circumstances reasonably have anticipated that he would be killed. * * * In each case if there is any issue of fact as to how the matter occurred, and as to what ought to have reasonably been expected as likely to ensue, the matter is for the jury. * * *

"It is also true, however, that where there are facts and circumstances or the testimony of witnesses which furnish contradiction, or where, as here, the testimony cannot be controverted because it relates to statements by or transactions with a decedent, whose lips are sealed by death, it is for the jury to judge the truth of the testimony, and to say whether the statements attributed to the deceased were in fact made by him."

In Aetna Life Ins. Co. v. Hagemyer (C. C. A. 5) 53 F.(2d) 636, 637, certiorari denied 285 U. S. 542, 52 S. Ct. 314, 76 L. Ed. 934, the only eyewitness to the killing was the slayer, whose version was that he shot only in self-defense. A peremptory instruction was denied. The Court of Appeals held that the jury had the right to examine the testimony in the light both of Page's interest in exculpating himself from blame and of the discrediting and contradictory circumstances which the evidence afforded, and to reject it in whole or in part as to them seemed proper. It further said: "We have had recent occasion to fully consider the law of this kind of case. In the Sargent Case, we have discussed at some length the questions raised here as to what constitutes prima facie proof, and as to the existence of a jury issue upon the truth of testimony uncontradicted by direct evidence, where there is the fact of interest, or there are circumstances in the record which tend to discredit it. In further extension of our views, we refer to that case. The judgment is affirmed."

■ Another contention made by the defendants was that Floyd was committing a trespass at the time of his death. This brings into question the correlative rights and duties of landlord and tenant, under local law; Gray being a share cropper upon the land of Floyd. It is urged by the plaintiffs that Gray's contract was void ab initio; but I pass that contention by, because, granting for the sake of argument that Gray had a valid lease, the jury were warranted in finding that the lease was terminated and that Floyd had a right to go upon the property at any time and was not a trespasser. He made no attempt to eject Gray by force, and it was not for the court to say that Floyd had no right to store tools and farming implements in the little outhouse nearby. This was a matter peculiarly for the determination of the jury, which was composed mostly of farmers, who evidently knew what custom prevailed in the neighborhood, and whether or not the landlord has a right to go upon such premises for the purpose of preserving his own property. Dave Gray testified that he was not using the little house for any purpose other than storing a few empty jars, and that it had been used in prior years for placing tools therein. But even if Floyd had no right to store the farming implements as he was attempting to do, he was committing merely a simple trespass from which he reasonably should not have anticipated bodily injury resulting in death.

■ The third contention is that Floyd was carrying a concealed deadly weapon, in violation of law, at the time of his death. This defense is ineffective for several reasons: First, carrying a pistol concealed is not necessarily a violation of the Mississippi statute (Code Miss. 1930, § 853 et seq.). The deceased had the right to carry it concealed under certain circumstances. Baker v. Supreme Lodge, K. P., 103 Miss. 374, 60 So. 333, Ann. Cas. 1915B, 547. In the second place, the jury having rejected Gray's testimony as to the overt act, the fact that the pistol was concealed on Floyd's person was not the cause of his death. It had no causal relation to his death, if, as the jury may have found, he never attempted to use it or made any overt act in connection with it. In the third place, the jury may have taken the view that the pistol was not on his person but in the pocket of the car, as testified to by Cuell Floyd.

No complaint of error is made in the briefs as to any specific proposition of law in the instructions given to the jury by the court, but I have re-examined the charge and think it was as favorable to the defendant as could fairly be asked. On the whole, the verdict and judgment seem to me to be correct, and the motion for a new trial will be overruled.