801 P.2d 681
**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Jerry ROMERO, Defendant–Appellant.**

**No. 12208.**

Court of Appeals of New Mexico.

Oct. 18, 1990.

Certiorari Denied Nov. 26, 1990.

Hal Stratton, Atty. Gen., Margaret McLean, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Gina Maestas, Asst. App. Def., Santa Fe, for defendant-appellant.

## OPINION

ALARID, Judge.

Defendant appeals his conviction for dueling. NMSA 1978, § 30–20–11 (Repl. Pamp.1984). He raises five issues on appeal. We reverse on the ground that there was insufficient evidence to send the case to the jury.

FACTS

We accept the facts as recited in the docketing statement and the parties' memoranda in response to the calendar notices, because the facts are unchallenged. *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct.App. 1985); *State v. Calanche*, 91 N.M. 390, 574 P.2d 1018 (Ct.App.1978).

Randy Johnson, defendant's neighbor, was watching television on the night of April 13, 1989, when he heard loud noises from next door. Johnson looked out his window and saw defendant and Ricky Salazar arguing. The two were located at the gate to defendant's yard. Johnson testified that Salazar and defendant were gesturing and shouting at each other. Johnson saw defendant walk toward his front door while Salazar walked toward the street to his car. The evidence supports an inference that the participants left to retrieve weapons. Johnson stated that Salazar had already started toward the street when defendant turned around to go back to his house. According to Johnson, the two "were more or less facing each other" at some point. Johnson resumed watching television.

Within a few seconds, Johnson heard rapid gunfire. Johnson testified he saw muzzle flashes coming from Salazar's car and the front of defendant's house. Johnson indicated he could not really see anyone during the shooting, and did not have any feeling regarding which gun went off first or where the initial shots came from. Salazar's car left the scene.

Both Salazar and defendant were wounded. In response to police questioning at the hospital, neither implicated the other. Instead, they led police to believe an unidentified third person was responsible for the shootings. Defendant told Officer Davis that someone had driven by and shot him. Defendant did not give any information regarding the identity of the perpetrator, the make of the car, or similar details. There was no direct evidence of a formal oral or written agreement to fight. After a jury trial, defendant was convicted of dueling. (Salazar was also convicted of dueling. His conviction is not the subject of this appeal.)

DISCUSSION

Section 30–20–11 provides:

Dueling consists of any person:

A. conveying by written or verbal message a challenge to any other person to fight a duel with any deadly weapon, and whether or not such duel ensues;

B. accepting a challenge from another person to fight a duel with any deadly weapon, and whether or not such duel ensues;

C. engaging in or fighting a duel with any deadly weapon; or

D. aiding, encouraging or seconding either party to a duel and being present at such duel when deadly weapons are used.

Whoever commits dueling is guilty of a fourth degree felony.

The state contends the actions of defendant fit within the conduct prohibited by the statute. While the conduct constituting dueling is set forth in Section 30–20–11, the term "duel" is not defined. When a term is not defined by the statute, a court may interpret the word in accordance with its ordinary meaning. *Security Escrow Corp. v. State Taxation & Revenue Dep't*, 107 N.M. 540, 760 P.2d 1306 (Ct.App.1988). Statutes must be construed according to the purpose for which they were enacted.

*State v. Shafer,* 102 N.M. 629, 698 P.2d 902 (Ct.App.1985).

The statutory prohibition against dueling in New Mexico dates from before statehood. *See* NMSA 1915, §§ 1466, 1477–1479. The purpose of antidueling statutes is to discourage and discountenance the settlement of quarrels by duel. *Griffin v. State,* 100 Tex.Crim. 641, 274 S.W. 611 (1925). In *Ward v. Commonwealth,* 132 Ky. 636, 116 S.W. 786 (1909), the court said:

> It was to abolish this barbarous practice that the antidueling statute and the constitutional provisions were enacted. It was not their purpose, nor indeed, was it necessary, to enact such laws to prohibit the ordinary vulgar fights and brawls that spring up and are carried on under the influence of sudden heat and passion.

132 Ky. at 641, 116 S.W. at 787. To determine whether defendant's conduct in this instance is within the purview of Section 30–20–11, we must define the term "duel."

█ We are not surprised at the absence of modern cases on this anachronism. That most of the few reported cases in this century have held that the particular facts presented therein did not present a dueling issue illustrates that this form of combat is long since dead. *See, e.g., Payne v. State,* 391 So.2d 140 (Ala.Cr.App.1980). While the cases are not uniform in their definitions of "duel," there is basic agreement on the essential elements. A duel is generally defined as "a combat with deadly weapons between two persons, fought according to the terms of a precedent agreement and under certain agreed and prescribed rules." 25 Am.Jur.2d *Dueling* § 1 (1966) (footnote omitted); *see also Payne v. State; Ward v. Commonwealth; Griffin v. State.* A duel differs from an affray in that the former is always a result of design while the latter is upon a sudden quarrel. *Payne v. State* (quoting *Black's Law Dictionary* 590 (4th ed. 1951)). A duel has none of the elements of sudden heat and passion. *Ward v. Commonwealth; Griffin v. State* (quoting *Ward*); *Baker v. Supreme Lodge, K.P.,* 103 Miss. 374, 60 So. 333 (1913). Duels are also generally fought under rules of considerable formality. *Ward v. Commonwealth; Griffin v. State* (quoting *Ward*).

█ The state contends there was sufficient evidence that defendant and Salazar engaged in a duel in the state's case-in-chief to submit this case to the jury. The question presented by a motion for directed verdict is whether there is substantial evidence supporting the charge. *State v. Maestas,* 92 N.M. 135, 584 P.2d 182 (Ct. App.1978). On appeal, we view the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict of conviction. *State v. Lankford,* 92 N.M. 1, 582 P.2d 378 (1978). However, where the evidence must be buttressed by surmise and conjecture rather than logical inference in order to support the conviction, this court cannot permit the conviction to stand. *State v. Vigil,* 87 N.M. 345, 533 P.2d 578 (1975).

In its memorandum in opposition, the state cites the following evidence and inferences in support of its contention that the trial court properly submitted the case to the jury: (1) defendant and Salazar were both shot; (2) both had weapons and ammunition immediately prior to the shootings; (3) Johnson's testimony that the two were facing each other; and (4) the shooting apparently occurred simultaneously. It concedes the actions of defendant and Salazar do not fit within the common law definition of dueling. "There was something highly romantic in the system, and there is no gainsaying that it held a high place in the estimation of the past age." *Ward v. Commonwealth,* 132 Ky. at 641, 116 S.W. at 787. Similarly, the state does not take issue with the proposal in the third calendar notice that the shootings took place in the heat of passion. *See id.* Rather, the state argues the combatants' actions fit within the definition of dueling found in Section 30–20–11. Specifically, the state maintains the statute merely requires a showing of an agreement to fight, and does not require a showing of formality or absence of heat of passion.

The state's argument overlooks the fact that the term "duel" is not defined in the

statute. As such, we look to the purpose behind the statute as well as the commonly understood meaning of the term.

■ With this in mind, we conclude the evidence was insufficient to establish anything more than a voluntary one-to-one fight with deadly weapons. *See Payne v. State.* The fact that defendant and Salazar were engaged in an argument just prior to the shootings, gesturing and shouting at each other, demonstrates that their actions were in the heat of passion.

> A duel has none of the elements of sudden heat and passion. On the contrary, it is a combat, fought in cold blood, and under rules prescribing the utmost formality and decorum. One of the strongest arguments in favor of the dueling system was the fact that it tended to eliminate sudden and bloody encounters between angry combatants; that the code of necessity gave time for passion to subside and sober reason to return; that it gave opportunity for the intervention of friends, and it was said that this of itself operated to prevent bloodshed.

*Ward v. Commonwealth,* 132 Ky. at 640, 116 S.W. at 787. We believe it would require surmise and conjecture to infer a formal agreement to fight a duel from evidence that the respective combatants went to their home and car to retrieve their weapons, that they were facing each other as they were shooting, and that the gunfire took place in rapid succession.

A survey of cases from other states supports our conclusion that the combatants in this case did not engage in a duel. In *Baker,* the legal question presented was whether a duel had been fought within the terms of a life insurance policy limiting the insurer's liability if the insured's death resulted from a duel. Lester came to see the deceased and asked him if he had killed Lester's dog. The deceased replied that he had done so accidentally. Lester grew angry and threatened to kill the deceased. The deceased told Lester he was unarmed, but if he would let him get to his cash drawer, he would "shoot it out with him." The deceased went toward the cash draw-

er, but before reaching it, drew a pistol and turned toward Lester. Lester shot and killed the decedent. The court in *Baker* found that no duel, as the term is commonly understood, had occurred under the facts of the case. *See also Payne v. State* (no dueling issue where defendant and decedent exchanged racial epithets over CB radio while parked at truck stop, defendant drove by decedent's truck, truck door opened, and shots exchanged, even though there was some discussion of meeting in the parking lot); *Ward v. Commonwealth* (a person will not be held guilty of challenging another to fight a duel where on meeting the other he draws a gun and invites him to fight then and there); *Griffin v. State* (no duel in context of ongoing property dispute where there was no evidence that a meeting at which shooting incident occurred was pursuant to an agreement to shoot it out or that either participant had shown up for that purpose).

Finally, insofar as the state argues it could not have charged defendant and Salazar with any crime other than dueling, we fail to understand the relevance of the argument. The issue in this case is the sufficiency of the evidence to support conviction under Section 30–20–11. In any event, we disagree with this argument. *See* NMSA 1978, § 30–3–5 (Repl.Pamp.1984) (aggravated battery). The state argues it could not have diligently prosecuted aggravated battery because neither combatant would cooperate; hence, there was no victim. Nevertheless, Johnson was an eyewitness to the incident. We see no reason why his testimony would not have been just as useful in aggravated battery prosecutions against both participants.

We agree with the court's conclusion in *Payne* that:

> It seems that ... the evil "commonly called a duel" is now dead, has been dead and buried for many years, and there has been no general resurrection of it. The incident involved in the instant case was not a resurrection of its body. In the most favorable light to the appellee on

the issue, it purports to be nothing more than a reincarnation or transmigration of its soul.

391 So.2d at 146.

## CONCLUSION

There being insufficient evidence establishing that defendant and Salazar engaged in a duel, as that term is commonly understood, the trial court erred in allowing the case to go to the jury. *State v. Maestas.* Defendant's conviction is reversed. This matter is remanded with instructions to dismiss the charges against him.

IT IS SO ORDERED.

MINZNER and APODACA, JJ., concur.