29868.  McLENDON, administratrix, *v.* JOHNSON, executrix.

DECIDED MARCH 12, 1943.  REHEARING DENIED MARCH 26, 1943.

*Anderson, Anderson & Walker,* for plaintiff.
*Martin, Martin & Snow,* for defendant.

SUTTON, J.  Mrs. Walter McLendon, as administratrix of the estate of Miss Mae Mitchell, filed suit against Mrs. Laura Johnson, as executrix of the last will and testament of Walter M. Huhn, deceased, alleging that at the time of the death of the defendant's testator he was indebted to the estate of the plaintiff's intestate in the sum of $4500 principal, and interest thereon from March 1, 1938, at six per cent. per annum, for money lent to the defendant's testator by Virgil Guerardie; that Guerardie died after having so lent the money, leaving a will in which he left all of his estate to the plaintiff's intestate and named her as sole executrix; and that she qualified as executrix, assented to the legacy in her favor, and collected interest on the loan from the defendant's testator to March 1, 1938, but that no interest had been paid since that date.  The

defendant answered, denying the material allegations of the petition, and filed a special plea alleging that, even if Virgil Guerardie did not intend that Walter Huhn should have the $4500 as a gift, Miss Mitchell, as executrix and sole legatee under the will of Guerardie, did, after the death of Guerardie, on February 9, 1938, enter into an agreement with Huhn by which she transferred to Huhn the sum of $4500 in consideration of his agreeing to pay to her $270 per annum during her lifetime.

On the trial Julian F. Urquhart testified for the plaintiff by deposition: "Before I was taken sick I was a practicing attorney in the City of Macon. I was intimately acquainted with a man by the name of Virgil Guerardie, who lived here up to sometime in the year 1938. . . I prepared his will for probate, and it was caveated by Arthur Lewis as attorney for his niece and another relative, C. C. Cunningham. The will was finally admitted to probate. I have known Walter Huhn for thirty years. The day following the probation of the will of Guerardie I received a telephone call from Walter Huhn to come to his office, which was in a store on Mulberry Street. . . When I got there he took me back to his private office in the rear of the building. . . Walter said to me: 'I want to tell you something that nobody else knows or will likely know but you and me, since Guerardie is dead.' I said, 'Well, Walter, if you want to confide in me anything, I will be glad to receive it. . . I will construe it or abide by it as I think best.' He said 'I have got $4500 in cash of Virgil Guerardie's money.' I said, 'How did you get it?' He said, 'He came by here one day a year or two ago—or several years ago, whichever it was—with that much money in his pocket, and said to me, "I want to leave this money with you, because I trust you more than I would any bank." Walter said, 'I don't need the money. I haven't got any use for it.' Guerardie said, 'That is all right; go ahead and take it and pay me six per cent. per year during my life, and at my death pay Miss Mitchell the same amount, six per cent. on the money, until she dies.' There was nothing else said at that time about how he received the money or how he got it or what was done with it. I asked him distinctly if there were any documents or papers or instruments in writing of any kind giving some outline or history of the transaction, and he said positively that there was not; that it was purely a personal transaction. He said he had not paid

the principal debt, nor had he finished paying the interest on the money, so far as he computed, because I later collected part of it. . . Miss Mitchell was living at that time. I think she lived a year or two. . . Walter Huhn paid interest on that money after that time to me. He paid it to me once. He died afterwards before the next installment became due. That was after Miss Mitchell died. She had died, and he insisted that he owed this money; and we computed it to a month where he received the money originally, so as to make it a year at six per cent. on the amount, and then proportioned it according to what remainder had not been paid after Miss Mitchell died. I only know, Mr. Anderson, from personal relations that he did not pay Miss Mitchell anything. I handled a great many of her affairs, in fact all of them, collecting money for the estate where she was a legatee, other moneys besides this, and paid it to her. Huhn paid me around $128 and something, I think. . . It represented a balance due on a year's interest from the month of April, putting April as the time that he let him have the money."

Counsel exhibited at this point a receipt dated February 9, 1938, signed by Miss Mae Mitchell, and witnessed by Urquhart, as follows: "Received of Walter M. Huhn the sum of two hundred and seventy dollars ($270), out of which she is to pay me sixty-five dollars ($65) advanced as loans to her, Miss Mae Mitchell, which amount is paid to me in full, as per instructions and conditions made by Virgil Guerardie in his lifetime and before his death, to March 1st, 1938, and annually thereafter until the death of Miss Mae Mitchell the same amount; such payments to cease upon her death. In consideration of the performance by Walter M. Huhn of the above instructions and conditions of said Virgil Guerardie I hereby release said Walter M. Huhn from any and all obligations and liabilities to me individually and as executrix of the estate of said Virgil Guerardie." The witness identified this paper and testified regarding it as follows: "It seems that she advanced him some money there. There is some money advanced in there. I am not clear on that receipt. . . That was a receipt that I drew as between them, their personal matter. I can't tell the circumstances under which that receipt signed by Miss Mae Mitchell was obtained, the one for the $270 signed by her individually. My memory is not clear enough on it to give you the definite circumstances. . .

I know that is Miss Mitchell's signature, and that is my signature there as witness. . . I don't remember clearly enough to say whether I had any conversation with Mr. Huhn prior to that time, that led me to put that statement in there, or whether, after the first conversation that I had with him about this money, I had any subsequent conversations with him relative to this fund and what was to be done about it."

On cross-examination the witness testified: "I should say Miss Mitchell lived a year or more after Guerardie died. I don't know positively. Walter Huhn lived after she died. . . I think Virgil Guerardie died in 1937 or 1938. He died a year or two before she died. . . After Mr. Huhn died I came to your office [of counsel for the defendant]. . . I think I came twice, and on each of those occasions I talked to Cubbedge Snow and you [Mr. Martin]. That is right. Prior to that time I did not attempt to make a contact with Mrs. Laura Johnson, a sister of Mr. Huhn, who was executrix of his estate. No, sir, I was confined to my bed off and on, on Walnut Street, and I never got out, to tell you the truth. . . At the time I came up there and talked to Mr. Snow and you I advised you that the estate of Walter Huhn owed me a fee. . . It was one third of $4500, or $1500, of which I owed another party that he had employed one half of it. Mr. R. L. Anderson was the other party. Mr. Huhn employed Mr. Anderson, too. . . Mr. Huhn told me that Mr. Guerardie had told him he had no affection for his niece. . . I came to you as the attorneys representing the estate, the executrix of Walter Huhn, that is right, and asked for a fee of $1500, that is right, for explaining the conditions to him. . . I was after getting my fee, and I didn't have any idea about where the balance, what would become of the balance. . . I don't know whether or not I suggested to you that it would probably be better for the estate of Walter Huhn to pay that fee than it would be for that information to be turned over to Mr. Cunningham or to some of the heirs of Virgil Guerardie. I may have. I don't know. And it may be true that I indicated that unless you did prevail on Mrs. Johnson to pay this fee it was likely that this information would reach the ears of the relatives of Guerardie. I won't be sure about that. That may be true. It could be true. And shortly after that I sent for Mr. R. L. Anderson, and he came to my house. I asked

Mr. Anderson to contact Mrs. Johnson's attorneys, that is, Martin, Martin & Snow. . . The services I figured that I and Mr. Anderson rendered which would entitle us to a $1500 fee out of the estate of Walter Huhn was the fact that if it was true that it was a gift, and we saved Walter Huhn $3000, that we were entitled to a $1500 fee. Huhn was in possession of this money, and Guerardie was dead when I first found out about it. . . Mr. Walter Huhn employed me as an attorney, and he likewise employed Mr. Anderson through me. . . He agreed to pay the two of us $1500. I can't possibly fix the date when that agreement was made. It was some time after this disturbance about the return to the Federal court. I mean the Federal income-tax return, because he was worried about that; and he said to me, 'Julian,' he said, 'I want a man that knows something about this.' I says, 'Well, I can tell you a man that knows more about estates and more about gifts and matters of that kind than all of the Macon bar put together.' Then he says, 'Who is he?' and I said, 'R. L. Anderson,' and he said, 'Well, then, go to him and get his opinion. You two make up your opinion and return it and bring it back to me.' I would not say I was attorney for Miss Mitchell during her lifetime, but I would say most of her lifetime. I would not say I was her attorney up until the time Guerardie died and up until the time she died. . . I was acting for her when I signed this receipt on February 9, 1938, 'Julian F. Urquhart, as attorney at law for Miss Mae Mitchell, individually and as executrix of' the estate. . . Miss Mitchell knew that Walter had this $4500. I believe she knew it at the time she signed this receipt here on February 9, 1938. . . I don't believe I would have prevailed on a client to sign a receipt she was not familiar with what she was doing. So then my best judgment is that Miss Mitchell was fully aware of the fact that Walter Huhn had the $4500, and that he was paying her six per cent. interest so long as she lived on that amount, and that so far as I knew, and so far as she knew, and so far as Walter told me, that that was the only condition that Guerardie attached to that gift. . . I don't know how that $65 came in there [the receipt dated February 9, 1938.] I am not familiar with the details. Walter had probably advanced that to her previously, had he not? . . I think that $128 is the last money I ever collected from him [Huhn]. . . I can't tell you what be-

came of that $128.25. . . . Walter and Guerardie were close friends, bosom friends."

On redirect examination the witness testified: "At the time I had the conversation with Walter Huhn, the day after the probate of the will of Virgil Guerardie, in this conversation that occurred between us that I have related, nothing whatever was said at that time about employing me to represent Huhn in connection with this matter, in trying to get him released from this debt. I had no idea in my head, he had none in his head, of any legal employment or any institution of any suit or anything else regarding that. At that time I was representing the estate of Virgil Guerardie. All he wanted to do was to get it off his chest. He was talking to me as a friend and as representing the executrix of the estate of Virgil Guerardie. A few days or months after that he called me again, and talked to me about this matter or said he was worried about the income-tax return in the Federal office. I never gave it any concern, because I don't know why I should. . . He said, 'I want to know how to return this thing to the Federal court. I don't want to get in trouble with the Federal court, the income-tax people, and I want to know how to return this fund of $4500.' . . This receipt, dated February 9, 1938, signed Mae Mitchell, for $270, does not state specifically what that $270 was for, and I can not tell either. I know it represents interest, because she gave me $50 out of it. . . That $128.25 that I gave the receipt for after Miss Mitchell's death represented the balance of the interest due on the $4500 fund to Miss Mitchell after her death. . . That $128.25 figured out the interest on the fund from March 1 to the date she died, but this money was paid, of course, after her death. This $128.25 was paid after her death."

In a supplemental examination by deposition the witness testified: "In my cross-examination the other day I stated, in answer to some questions by Mr. Martin, that I went to his office after the death of Guerardie and after the death of Miss Mitchell, and called on him as the attorney for the estate of Huhn to pay me a fee for services rendered in connection with this fund that Guerardie had turned over to Huhn. I testify now that neither Mr. Martin nor anybody connected with his firm or with the estate of Huhn paid me that fee or any part of it. . . The reason given for not paying me the fee, when I called on Mr. Martin, was he said that I

220

was not legally connected with the case, that I was not entitled to it. He took a fair stand from his standpoint, and said I was not entitled to it, and gave me his reasons for it, and said he would not pay it for those reasons. . . I first talked to Miss Mitchell about it [Huhn's statement as to the $4500 turned over to him] after Guerardie's death, the next morning after his death or maybe that night; either that night or the next morning. Miss Mitchell knew about it then, yes, sir, she knew about it. . . She knew that she was to get interest from Walter. I didn't know it until the next morning, either that night or the next morning, I won't say which, because he [Guerardie] died, and I went down there and we discussed the things, you know. The night of his death I was there before he got cold. I won't say whether it was that night or the next morning that she told me about the interest Walter was to pay. So she knew about the money that Guerardie left there all along. It was not a surprise to her. . . And when I discussed the matter with her I believe she knew already it was there. I believe from what she said she knew it was already there. I don't know that when Walter Huhn told me about it I had already gotten that information from Miss Mitchell, because it was the next day Walter sent for me to come down there, not the next day after he died, the next day after Guerardie's will was set up. . . I had not acquired that information from her before I set up the will. Yes, sir, she told me those facts, and I knew them either the night Virgil died or the day following. . . The death of Miss Mae Mitchell was the condition that justified me in asking for a $1500 fee for me and Mr. Anderson. When she died and Guerardie had died then I felt like that my fee was in better shape and was practically earned. The only condition I know anything about was paying Guerardie interest while he lived, after his death paying Miss Mitchell six per cent. interest till she died; then nothing else was said or done; and that is all, according to Huhn's positive statement to me. . . The date of the probation of the will is the date that I set as the time after which Walter Huhn called me to his office and disclosed to me the information I have given you about this loan of $4500. . . I do not remember nor can I state positively Miss Mitchell had told me anything about this $4500 being loaned to Huhn, or turned over to him, before that time [the day after the probate of Guerardie's will]. . . She may have, but I

don't think so. . . My sickness has affected my mind as to details and things of that sort. I am perfectly clear as to what Walter Huhn told me about the circumstances under which he got that money from Guerardie."

There was other evidence about which there was a conflict; but as we do not deem it necessary to a decision of the issue here involved we do not set it forth. Upon the conclusion of the introduction of evidence the court directed for the plaintiff a verdict of $128.25, representing interest at six per cent. per annum on $4500 from March 1, 1938, through the date of the death of the plaintiff's intestate on August 21, 1938. The plaintiff moved for new trial on the general grounds, and by amendment added a special ground assigning error on the direction of the verdict of only $128.25, contending that it should have been for $4500 and interest thereon from March 1, 1938, to August 21, 1938, at six per cent. per annum, and thereafter at seven per cent. per annum until paid. The court overruled the motion, and the exception is to that judgment.

The circumstances under which Huhn received from Guerardie the sum of $4500 here sued for were, as the witness Urquhart testified, vaguely stated to him, upon answering a call from Huhn the day after the witness had probated the will of Guerardie, as follows: "Walter said to me, 'I want to tell you something that nobody else knows or will likely know but you and me, since Guerardie is dead. I have got $4500 in cash of Virgil Guerardie's money. He came by here one day a year or two ago—or several years ago, whichever it was—with that much money in his pocket, and said to me, 'I want to leave this money with you, because I trust you more than I would any bank.'" Then Huhn said, "I don't need the money. I haven't got any use for it." Then Guerardie said, "That is all right, go ahead and take it and pay me six per cent. per year during my life, and at my death pay Miss Mitchell the same amount, six per cent. on the money, until she dies." According to the witness, "There was nothing else said at that time about how he received the money or how he got it or what was done with it. I asked him distinctly if there were any documents or papers or instruments in writing of any kind giving some outline or history of the transaction, and he said positively that there was not; that it was purely a personal transaction. He said he had not

paid the principal debt, nor had he finished paying the interest on the money, so far as he computed, because I later collected part of it." The plaintiff contends that the evidence shows that the sum of money turned over to Huhn was a loan at six per cent. interest per annum. The defendant contends that it represented a gift, and, if not a gift, that the agreement between Guerardie and Huhn evidenced a contract by the terms of which Huhn, for a consideration of $4500 in hand paid, agreed to pay an annuity of $270, the equivalent of interest at six per cent. per annum, to Guerardie during his lifetime, and after his death to pay a similar sum annually to Miss Mitchell during her lifetime. The details of the transaction between Guerardie and Huhn, as testified to by Urquhart, are rather meager. The witness did not indicate that he received a definite impression as to the nature of the transaction. In part of his testimony he spoke as if he understood that a loan was made, saying: "He said he had not paid the principal *debt,* nor had he finished paying the interest on the money. [Italics ours]." Again, he said: "Nothing whatever was said at that time about employing me to represent Huhn in connection with this matter, in trying to get him released from this *debt.* [Italics ours]." Again: "I do not remember nor can I state positively Miss Mitchell had told me anything about this $4500 being *loaned* to Huhn, or turned over to him, before that time [the day after the probate of Guerardie's will]." (Italics ours). He further testified: "The services I figured that I and Mr. Anderson rendered which would entitle us to a $1500 fee out of the estate of Walter Huhn was the fact, that, if it was true that it was a *gift* and we saved Walter Huhn $3000, that we were entitled to a $1500 fee [Italics ours]." Again: "It was some time after this disturbance about the return to the Federal court [the date when, the witness said, Huhn agreed to pay a fee]. I mean the Federal income-tax return, because he was worried about that, and he said to me 'Julian,' he said, 'I want a man that knows something about this.' I says, 'Well, I can tell you a man that knows more about estates and more about *gifts* and matters of that kind than all of the Macon bar put together.'" (Italics ours). Again: "So then my best judgment is that Miss Mitchell was fully aware of the fact that Walter Huhn had the $4500, and that he was paying her six per cent. interest so long as she lived on that amount, and that so far

as I know, and so far as she knew, and so far as Walter Huhn told me, that that was the only condition that Guerardie attached to that gift." (Italics ours.) Again: "The only condition I know anything about was paying Guerardie interest while he lived, after his death paying Miss Mitchell six per cent. interest till she died; then nothing else was said or done; and that is all, according to Huhn's positive statement to me." The witness further testified that "A few days or months after that he called me again and talked to me about this matter, or said he was worried about the income-tax return in the Federal office," but nothing is indicated as to whether Huhn told him the money was turned over to him as an intended gift, a loan, or as a consideration for paying annuities to Guerardie and Miss Mitchell.

We have no hesitancy in saying that the evidence fails to show a *gift* from Guerardie to Huhn. The Code provides: "To constitute a valid gift, there shall be the intention to give by the donor, acceptance by the donee, and delivery of the article given or some act accepted by the law in lieu thereof." Code, § 48-101. "Actual manual delivery shall not be essential to the validity of a gift. Any act which shall indicate a renunciation of dominion by the donor, and the transfer of dominion to the donee, shall be a constructive delivery." § 48-103. In *Mims* v. *Ross,* 42 *Ga.* 121 (2), it was ruled: "To make a valid gift, there must be a present intention *to give,* and a complete renunciation of right, by the giver, over the thing given, without power of revocation, and a full delivery of possession *as a gift,* inter vivos." (Italics ours.) See *Burt* v. *Andrews,* 112 *Ga.* 465, 467 (37 S. E. 726); *Clark* v. *Bridges,* 163 *Ga.* 542, 544 (136 S. E. 444); *Bowen* v. *Holland,* 182 *Ga.* 430 (2) (185 S. E. 720); *Drake* v. *Wayne,* 52 *Ga. App.* 654, 660 (184 S. E. 339); *Brooks* v. *Brooks,* 54 *Ga. App.* 276, 278 (187 S. E. 687). But the intention to give is not to be left to surmise or conjecture. As was said in *Evans* v. *Lipscomb,* 31 *Ga.* 71 (3): "The general rule, governing parol gifts of chattels, is, that to constitute a valid gift, there must be an actual delivery of the chattel at the time of the gift, *accompanied by words characterizing the act as a gift."* (Italics ours.) In *Culpepper* v. *Culpepper,* 18 *Ga. App.* 182 (89 S. E. 161), it was held: "The intention to give *must be expressed."* (Italics ours.) Certainly no one could reasonably contend that Guerardie *expressed* an intention *to give* Huhn the sum of $4500.

When Huhn answered, "I don't need the money. I haven't got any use for it," Guerardie said, "That is all right; go ahead and take it and pay me six per cent. per year during my life, and at my death pay Miss Mitchell the same amount, six per cent. on the money, until she dies." Nothing in this language expresses an intention to give. The verdict was not demanded as a matter of law, and the court erred in so directing. The evidence was sufficient to authorize a jury to find that the $4500 placed in the hands of Huhn by Guerardie was a loan at six per cent. interest per annum, and to return a verdict in favor of the plaintiff for the amount sued for.

The following may be added in respect to the contention of the defendant in error, that, even if a gift of $4500 was not made to Huhn, the receipt of February 9, 1938, signed by Miss Mitchell, found in the effects of Huhn after his death, and introduced in evidence, "completely extinguished any claim which she had either as the executrix or as an individual against Huhn." This receipt, quoted in full above acknowledged receipt of $270, "which amount is paid to me in full as per instructions and conditions made by Virgil Guerardie in his lifetime and before his death, to March 1, 1938, and annually thereafter until the death of Miss Mae Mitchell the same amount, such payments to cease upon her death." Although it is stated in the receipt that "in consideration of the performance by Walter M. Huhn of the above instructions and conditions of said Virgil Guerardie, I hereby release said Walter M. Huhn from any and all obligations and liabilities to me individually and as executrix of the estate of Virgil Guerardie," such receipt was not binding on Miss Mitchell, individually or as executrix, as a release or an accord and satisfaction as to the $4500, which amount was not paid to her, but under the receipt it was to be paid in future; and the instrument relied on was to that extent an executory agreement. It did not purport to release Huhn from the payment of the $4500 merely because of the payment of $270 then being made to Miss Mitchell, but it was also conditioned on the further payments of a similar amount annually during her lifetime, as directed by Guerardie. Accordingly, the receipt did not, as above stated, amount to a release or an accord and satisfaction. Code, §§ 20-1201, 20-1203, 20-1204; *Walbridge v. Jacobs' Pharmacy Co.,* 60 *Ga. App.* 404 (3 S. E. 2d, 876). Moreover, it was

not a valid and binding release, for the reason that the recited consideration was money which, under the agreement between Guerardie and Huhn, she was entitled to in all events.

*Judgment reversed. Stephens, P. J., concurs.*

FELTON, J., concurring specially. In my opinion the evidence shows conclusively and as a matter of law that the transaction was a loan, and not a gift or purchase of an annuity. The majority opinion does not go further than to say that the transaction was not a gift, and that the jury was authorized to find that it was a loan. I think, as indicated, that the direction of the verdict was error, because the evidence demanded a verdict for the plaintiff in the full amount sued for.