30475. McLENDON, administratrix, *v.* JOHNSON, executrix.

DECIDED JUNE 7, 1944.   REHEARING DENIED JULY 20, 1944.

*Anderson, Anderson & Walker,* for plaintiff.

*Martin, Martin & Snow,* for defendant.

PARKER, J. This is the second appearance of this case in this court. See *McLendon* v. *Johnson,* 69 *Ga. App.* 214 (25 S. E. 2d, 53), in which a full statement of the contentions of the parties and of the evidence upon the first trial will be found. In the first trial a verdict was directed for the plaintiff in error here for $128.25 only, representing interest at six per cent. per annum on $4500, the principal sum sued for, from March 1, 1938, through the date of the death of the plaintiff's intestate on August 21, 1938. On a motion for new trial filed by the plaintiff that ruling was reversed by this court. In our decision it was held that the evidence failed to show a gift from Guerardie to Huhn, but that "the evidence was sufficient to authorize a jury to find that the $4500 placed in the hands of Huhn by Guerardie was a loan at six per cent. interest per annum, and to return a verdict in favor of the plaintiff for the amount sued for." We also held that the receipt for $270 given by Miss Mitchell to Walter M. Huhn, identified by the witness Urquhart on the first trial, did not amount to a release or an accord and satisfaction, and that it was not a valid and binding release because the recited consideration was money, which, under the agreement between Guerardie and Huhn, Miss Mitchell was entitled to in all events. The evidence upon the first and second trials was substantially the same, and the testimony of the only witness who testified concerning the circumstances under which the $4500 sued for was delivered by Guerardie to Huhn was the same upon both trials. The defendant in error amended her answer on the last trial by alleging that Guerardie transferred and delivered to Huhn $4500 in consideration of an agreement by Huhn to pay Guerardie during his lifetime annually the sum of $270, and after his death to pay a like sum annually to Miss Mitchell so long as she might live, and that Huhn had fully complied with said agreement. This amendment set up the contention that the transaction between Guerardie and Huhn amounted to, or was the equivalent of, the purchase of an annuity by Guerardie to be paid by Huhn so long as either Guerardie or Miss Mitchell might live, with no additional obligation or liability on Huhn. The jury found a ver-

dict in favor of this plea and against the plaintiff in error as to the $4500. The plaintiff in error moved for a new trial on the general grounds and three special grounds, the first of these being a restatement of a general ground, and the other two complaining of the charge of the court. Her motion for new trial was overruled and she excepts to that judgment.

■ The second special ground of the motion complains of a charge of the court as follows: "Should you find, however, that Guerardie and Huhn, under all the circumstances and facts of the case as you find them to exist, understood the placing of the $4500 with Huhn was not to be a loan, but was the consideration for Huhn to pay $270 per year to Guerardie during his life, and then to Miss Mitchell during her life, and the understanding was that nothing else was to be done by Huhn, and the $4500 was not to be repaid, then the plaintiff would not be entitled to a recovery of the said $4500." The third special ground complains of this charge: "Should you find the transaction was not a loan, but was an arrangement or agreement whereby Guerardie placed $4500 with Huhn as the consideration for a promise by Huhn to pay $270 annually to Guerardie during his life and to Miss Mitchell during her life, then you would find for the defendant in this case." The trial court submitted to the jury in the charges complained of the question whether the transaction was the purchase of an annuity instead of a loan. The main complaint of the plaintiff in error is that these charges were not authorized by the evidence. "The general rule is that a charge to the jury which is not authorized by evidence, and which is calculated to mislead and confuse the jury, requires a new trial." *Richter* v. *Atlantic Company*, 65 *Ga. App.* 605, 608 (3) (16 S. E. 2d, 259), citing *Trammell* v. *Atlanta Coach Co.*, 51 *Ga. App.* 705, 708 (181 S. E. 315); *Central Georgia Power Co.* v. *Cornwell*, 139 *Ga.* 1 (2 a) (76 S. E. 387, Ann. Cas. 1914A, 880); *Southern Marble Co.* v. *Pinyon*, 144 *Ga.* 259 (2) (86 S. E. 1086); and *Gaskins* v. *Gaskins*, 145 *Ga.* 806 (89 S. E. 1080). "In no trial should the scope of the court's instructions to the jury be more limited or more extensive than the range of the relevant evidence properly submitted therein. The charge of the court should be pertinent and applicable to the issues presented by the evidence, and it is error to charge the jury upon a theory which is not sustained by evidence." *Virginia Bridge & Iron Co.* v. *Crafts*,

2 *Ga. App.* 126 (58 S. E. 322). "To charge upon an assumed state of facts is error." *McDonald* v. *Beall, 55 Ga.* 289 (7). In the first excerpt complained of the court charged that if the jury found that Guerardie and Huhn "understood the placing of the $4500 with Huhn *was not to be a loan,* but was the consideration for Huhn to pay $270 per year to Guerardie during his life, and then to Miss Mitchell during her life, and the understanding was that nothing else was to be done by Huhn, and the $4500 *was not to be repaid*" (italics ours), the plaintiff could not recover. In the second excerpt the court charged that if the jury found the "transaction was not a loan, but was an arrangement or agreement whereby Guerardie placed $4500 with Huhn as the consideration for a promise by Huhn to pay $270 annually to Guerardie during his life and to Miss Mitchell during her life," they would find for the defendant. We have carefully considered all of the evidence and do not find anything therein to authorize these particular charges. It seems that the court assumed a state of facts not sustained by the evidence. The charges were therefore erroneous and harmful to the plaintiff in error, and a new trial should have been granted because of this error.

Since this case has been tried twice and will be tried again we think it pertinent to say that under the evidence in the record the transaction between Guerardie and Huhn was as a matter of law a loan of $4500 by the former to the latter with interest at six per cent. per annum, and a verdict for the plaintiff in the full amount of the principal together with appropriate interest was demanded. When the case was here before, the majority of the court did not deem it necessary to decide more than that the transaction was not a gift, and that the receipt given by Miss Mitchell to Huhn after Guerardie's death did not amount to an accord and satisfaction. The controlling issue before this court at that time was the direction of the verdict in the face of evidence that would have warranted a finding that the transaction was a loan. But now we have a verdict found by the jury after hearing evidence and being charged by the court. It is therefore necessary that we decide whether under the evidence and the principles of law applicable the jury were authorized to find that the transaction was anything other than a loan. In order to find that it was an annuity it is necessary to resort to speculation and conjecture,

and to assume and supply features and facts lacking in the evidence.  On the other hand, we have present in the evidence several earmarks of a loan.  The principal witness testified that after the death of Guerardie, Huhn said to him, "I have got forty-five hundred dollars in cash of Virgil Guerardie's money;" that Huhn told him that Guerardie had said, "I want to leave this money with you because I trust you more than I would any bank," and, "go ahead and take it and pay me six per cent. per year during my life, and at my death pay Miss Mitchell the same amount, six per cent. on the money, until she dies;" and that he (Huhn) had not paid the *principal debt* nor had he finished paying the *interest* on the money.  Here we have four elements of a loan, namely: a principal sum, a placing of the sum with a safe borrower, an agreement that interest was to be paid, and a recognition by the receiver of the money of his liability for the return of the principal amount with accrued interest.  Huhn's concern over his income-tax return can be construed in the light of a loan because interest paid on a loan would have been a deductible item.  He did not seem to know whether this type of loan should be reflected in his returns.  As far as appears from the evidence, there was no return of the $4500 as income by Huhn.  If the transaction were anything other than a borrowing of the money at interest by Huhn, he would have had an item of income.  It is to us significant that much was said about the payment of interest in all of the conversations, dealings, and transactions related by the witness Urquhart, and that the annual payment of $270 was the equivalent of six per cent. interest per annum on $4500, the principal sum involved.  "The usual import of the term [interest] is the amount which one has contracted to pay for the use of borrowed money." *Department of Revenue* v. *King Bros. Motor Co.,* 70 *Ga. App.* 741 (29 S. E. 2d, 529), citing Old Colony R. Co. *v.* Commissioner of Internal Revenue, 284 U. S. 552 (52 Sup. Ct. 211, 76 L. ed. 484).  Counsel for the defendant in error stress somewhat the unreasonableness of the transaction construed as a loan.  In view of the advanced ages of Guerardie and Miss Mitchell, he being probably 68 years of age, and she older than he, as shown by evidence offered by the defendant, it is more reasonable to conclude that the money was loaned to Huhn than that it was used in the purchase of an annuity of only $270 per year.

■ Counsel for the defendant in error insist that the principal witness, Urquhart, swore wilfully and knowingly falsely, and that for this reason his testimony should be entirely disregarded in view of the court's charge of the provisions of the Code, § 38-1806, namely: "When a witness shall be successfully contradicted as to a material matter, his credit as to other matters shall be for the jury, but if a witness shall swear wilfully and knowingly falsely, his testimony shall be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence. The credit to be given his testimony where impeached for general bad character or for contradictory statements out of court shall be for the jury to determine." While Urquhart's testimony was confused and somewhat contradictory, it appears that he had been sick "off and on for the last five years," and had been confined for about nine months, and he testified that this sickness had affected his mind "as to details and dates and things of that sort." However, he emphasized that he was perfectly clear as to what Huhn told him about the circumstances under which he (Huhn) received the money from Guerardie. It has been held that "before this principle of such total rejection . . will have application, it must manifestly appear, not only that the witness on one or the other occasion has sworn falsely to a material matter, but that he has done so wilfully and knowingly. The rule does not extend to situations where it is shown to be reasonably possible that the discrepancy was occasioned by 'mistake or the failure of memory.'" *Smaha* v. *George,* 195 *Ga.* 412 (24 S. E. 2d, 385). And see the authorities therein cited. Furthermore, the witness was abundantly corroborated on material points by the two receipts which came from the custody of the defendant. Under the evidence as a whole the jury were not authorized to find that this witness was a wilful perjurer, but· were compelled to find that he was corroborated by other evidence, including the receipts found among Huhn's effects. The record contains nothing with respect to the witness that would require that the said total-rejection principle be invoked. Therefore the verdict favoring the defendant can not be sustained on the contention that the plaintiff failed to prove her case because of Urquhart's having been conclusively impeached, where reversible error, as pointed out in divisions 1 and 2 of this opinion, was committed upon the trial.

*Judgment reversed. Sutton, P. J., and Felton, J., concur.*