JOHN PAUL JONES, appellant, v. IOWA STATE TAX COMMISSION, appellee.

No. 48878.

(Reported in 74 N.W.2d 563)

FEBRUARY 7, 1956.

Putnam, Putnam & Putnam, William H. Fulton, W. C. Hoffmann, Jr., and T. C. Jones, all of Des Moines, for appellant.

Dayton Countryman, Attorney General, Edward R. Hayes and M. A. Iverson, Special Assistant Attorneys General, and Ruth B. Fritz, Assistant Commission Attorney, for appellee.

THOMPSON, J.—It is plaintiff's contention that he is entitled to exemption from taxation under section 427.3(4) of the Code of Iowa 1950 (1954). We set out herewith the applicable portions of this statute:

"427.3 Military service—exemptions. The following exemptions from taxation shall be allowed:

"4. The property, not to exceed five hundred dollars in taxable value of any honorably separated, retired, furloughed to a reserve, *placed on inactive status,* or discharged soldier * * * of the second world war * * *." (Italics supplied.)

The defendant, Iowa State Tax Commission, having ruled that the plaintiff is not entitled to such exemption, he appealed to the Polk County District Court, which upheld the ruling of the Commission. Plaintiff appeals.

There is little dispute in the factual record. The plaintiff having been refused admission to any of the branches of the regular United States military or naval services, apparently because of his age (he was thirty-six years old), on October 13, 1942, voluntarily enlisted in the Army Air Corps Enlisted Reserve Corps of the Army of the United States. This was an organization under the control and direction of the Civil Aeronautics Administration, known as its "War Training Program." He passed a physical examination, was assigned serial number 1711-2475, and took an oath administered to all members of the Army Air Corps Enlisted Reserve Corps. He started active ground school training on January 4, 1943, and flight training on January 13, 1943, at Des Moines, with the Iowa Airplane Company. This training terminated on March 10, 1943. On April 20, 1943, the Civil Aeronautics Administration issued its "Notification of Assignment and Travel Order" which advised plaintiff he "must report" to C. H. Fisher at Huron College, Huron, South Dakota, for further training. He reported there on April 30, 1943, and took further ground school and flight training until June 27, 1943. On June 24, 1943, the Civil Aeronautics Administration War Training Service notified him that he "must report" to W. W. Bass, Chanute Junior College, Chanute, Kansas. He reported there on July 1, 1943, and pursued prescribed courses of training until August 6, 1943.

On October 1, 1943, the same CAAWTS·issued a further "Notification of Assignment and Travel Order" advising plaintiff he was "directed to proceed" to San Antonio, Texas, to report to the Student Instructor Detachment Building at Brooks Field for further training, and that he "must report" on October 11, 1943. He pursued prescribed courses of training there from Oc-

tober 11, 1943 to November 11, 1943, when he was transferred to Randolph Field. Here he received further training until December 15, 1943, when he was released to return home. He received on January 3, 1944, an instrument denominated an "honorable discharge" from the Army, and had no further connection with the military effort.

While at Des Moines, Huron and Chanute the plaintiff was clearly under the jurisdiction of the Civil Aeronautics Administration, a branch of the Department of Commerce. His instructors were, with one exception, civilians. But upon reporting at Brooks Field, and while there and at Randolph Field, his detachment was lodged in Army barracks, ate Army food, and had Army Air Force instructors. He was a part of one of seven flights reporting there, and the Army Air Force immediately activated two of these; not, however, including the one of which plaintiff was a member.

However, the unactivated flight members, including plaintiff, were required to purchase uniforms, which much resembled, if they were not identical with, those of regular air force officers. This was at their own expense. Flight equipment was furnished by the Army. (It should be noted that at this time the air force was not a separate branch of the armed forces, but was a part of the Army.) Plaintiff and his fellow nonactivated trainees were required to salute officers and were subject to military law and discipline. They were issued standard Army identification tags ("dog" tags) with the usual information, except that they did not contain certain information as to blood type and vaccination and other inoculations. The members of the unactivated flights were given the same training as those of the activated flights; sometimes a member of an unactivated flight would be flying in the same plane with a member of the activated flight. The Army did not pay plaintiff and the other unactivated trainees at any time. Such compensation as they received apparently came from another source, perhaps the funds of the CAA.

The honorable discharge received by the plaintiff describes him as a private in the Enlisted Reserve Corps and certifies that he "is hereby Honorably Discharged from the military service of the United States of America.

534

"This certificate is awarded as a testimonial of Honest and Faithful Service to his country." The discharge shows the headings of prior service, military qualifications, army specialty, battles, engagements, skirmishes, expeditions, wounds received, smallpox, typhoid and other vaccinations, and diphtheria immunity test, each followed by the word "None." Under "Remarks" are the words "No active service." Other facts so far as material will be set out in the divisions of this opinion which follow.

█ I. At the outset of our consideration of this appeal we are met by a well-established rule of law, which we think under the facts shown is of controlling importance. Taxation is the rule and exemption therefrom the exception; and the claimant of such an exemption must show his right thereto by evidence which leaves the question free from doubt. We have so held repeatedly.

█ In Readlyn Hospital v. Hoth, 223 Iowa 341, 344, 272 N.W. 90, 91, 92, we said: "Statutes passed for the purpose of exempting property from taxation must be strictly construed, and if there is any doubt upon the question it must be resolved against the exemption and in favor of taxation. The exemption is not to be made by judicial construction, but anyone claiming exemption from taxation under a statute must show clearly that the property is exempt within the terms of the constitution and the statute."

There follows citation of many previous Iowa cases which have upheld the rule. It has been followed in later cases.

In Lamb v. Kroeger, 233 Iowa 730, 733, 8 N.W.2d 405, 406, is this language: "This law is a tax-exemption law. As such it must be strictly construed to the end that no property shall be exempt except that which clearly and fairly falls within the express terms of the law."

To the same effect we quote from Cress v. State Tax Commission, 244 Iowa 974, 977, 58 N.W.2d 831, 833: "We know that taxation is the rule and exemption the exception, and the taxpayer claiming an exemption is held to strict proof that he comes within the statute."

The claimant for exemption must show that his demand is

within the letter as well as the spirit of the law. We said in Trustees of Iowa College v. Baillie (Oliver, J.), 236 Iowa 235, 238, 17 N.W.2d 143, 146: "A claim for exemption cannot be sustained unless it is clearly shown to be within the letter and spirit of the law [citing authorities]." See also 84 C. J. S., Taxation, section 225, footnote 46.

It will be noted the claim for exemption must be within both the letter and the spirit of the statutes; a showing that it is within the spirit only will not suffice. Black's Law Dictionary, Third Edition, defines the "letter" of the law in these terms:

"The letter of a statute, as distinguished from its spirit, means the strict and exact force of the language employed, as distinguished from the general purpose and policy of the law."

It is apparent, therefore, that the burden resting upon the plaintiff here is a somewhat heavy one. It is not sufficient for him to show that he performed services similar to those of soldiers on active duty, or that he was patriotic, eager to aid his country in time of war, and made substantial sacrifices in his attempt so to do. These things he did, and this attitude he undoubtedly had. But he must also bring himself within the exact letter of the law before his claim to exemption can be upheld.

II. It is plaintiff's contention that he was in fact on active duty with the Army Air Force, and so his claim is within the letter of the law. Most of his argument at this point deals with his service at Brooks and Randolph Fields. Conceding that the Army never technically marked him as a soldier on *active* duty, he urges that he was subject to many of the same requirements and regulations and went through the same training procedures as those who were so designated, and so must be considered as having been in active service. He was, he says, subject to Army regulations and discipline, he lived in Army barracks and ate Army food. The training given him was identical with that required of active personnel. When he was separated from the service, he was given an honorable discharge.

On the other hand, some distinctions are apparent. He was required to purchase his own uniforms, which were markedly different from those worn by enlisted men. His pay did not come from the Army. To what extent he may have been subject

to Army discipline is not clear, nor is it certain whether he was bound to remain in training and under Army control. His "dog tag" did not contain all the information given for those on active duty. There is some indication, as will presently be made clear, that he did not feel himself a member of the armed forces so that he might not withdraw when he desired.

The conclusion is inescapable that plaintiff was never on what is known as "active service" so that he comes within the letter of the statute. The plaintiff contends that in interpreting the Iowa statute we are not bound by federal regulations and laws as to who were and who were not soldiers. This may be conceded; and yet we think, since it was the Federal Government which called for soldiers and inducted them and in whose service they were at all times employed, we must give weight to that government's interpretation when we are called upon to determine the fact of being or not being an "honorably separated, retired, furloughed to a reserve, placed on inactive status, or discharged soldier * * * of the second world war * * *." All our country's soldiers of this war were soldiers of the United States, rather than of any state. We think it clear that the Iowa statute, section 427.3 (4), could refer only to such soldiers; and we must therefore determine whether they were "soldiers" within the meaning of the term as used by the Federal Government.

We find that the national Army did not consider one who was never placed on active duty, to be a soldier. The American Law of Veterans, Second Edition, section 6, says that for the purpose of benefits administered by the Veterans Administration "veteran of any war" includes any person who served in the active military or naval service. Richard Hudson, a professor of law at Drake University, testified that he served in the second world war and in the Korean war as a member of the Judge Advocate General's department of the United States Army. He said: "You get in the Service only if you occupy a certain category, and custom and usage is you are not in the Service as such unless you are either a regular Army Personnel or one of these other people on what is described among Army Personnel as simply *active* service. In other words, from the standard of custom and usage a person is not considered to be in the Service

unless he has some formal evidence of that status by way of an active duty classification." (Italics supplied.)

Professor Hudson then testified that there are a variety of persons who have some connection with the Army who are classified as "serving *with* the Army" instead of being *"in* the Army." (Italics supplied.) Considering the facts of plaintiff's service and duties, as testified to by him, Professor Hudson said plaintiff's proper classification was among those "serving with the Army."

██ We quoted with approval in Lamb v. Kroeger, supra, page 733 of 233 Iowa, page 406 of 8 N.W.2d, this definition of the word "soldier" from Webster's New International Dictionary, 2d Ed. : " 'One who is engaged in military service as an officer or a private; one who serves in an army; one of an organized body of combatants.' " We also placed stress in the same case upon the Army's attitude toward the claimant for exemption, by saying, page 733 of 233 Iowa, page 406 of 8 N.W.2d: "The Army had not accepted him as yet." It is clear that here the Army had not accepted the plaintiff, which it would do by placing him on the active list.

Nor does the fact that plaintiff, while at Brooks and Randolph Fields, was subject to military regulations and discipline, prove that he was "in" the Army rather than "with" the Army. The same point was urged in the Lamb case, supra. We quoted with approval, page 734 of 233 Iowa, page 407 of 8 N.W.2d, from Zearing v. Johnson, 10 Cal. App.2d 654, 657, 52 P.2d 1019, 1020 : " 'A person may be subject to military law without being a member of the armed forces of the United States.' " The California court cited Bannister v. Soldiers' Bonus Board, 43 R. I. 346, 112 A. 422, 13 A. L. R. 589, from which we also quote (page 425 of 112 A.) : "A person, however, may be subject to military law and regulations without being a member of the army, and it does not follow that a man must be a member of the army to be the subject of court-martial."

Plaintiff's exact status if he was a member of the Army seems to have been in doubt in his own mind. He wore a uniform, supplied by himself, comparable to those of officers; but he says in his testimony he was "classified under our status as something

below that of a private in the treatment which was accorded us. I might explain that by saying that under these programs which were civilian operated we did not have the protection which members of organized units on established military posts have by reason of the restrictions imposed upon their officers as to their treatment of their men. Q. You could be treated then differently than an enlisted man? A. We could and were on some occasions.''

The matter of the honorable discharge given to plaintiff is also material. In the Lamb case (page 732 of 233 Iowa) the plaintiff had received a letter from his draft board stating that all calls had been canceled, and " 'such cancellation in cases of registrants who were inducted has the effect of an honorable discharge from the army.' " We held there that this had little significance; and we think the same is true here. The discharge issued to plaintiff affirmatively showed no active service; and the witness Hudson, the only person testifying in the case with any technical knowledge of military law and procedures, said such a discharge means merely that it cleared the records of plaintiff's reservist status, and did not mean that he was in the Service. He described it as "standard operating procedure", apparently for the purpose of showing a discharge from reservist obligations.

Other matters, such as standing retreat, being required to salute officers and to obtain a pass before leaving the post, are discussed by Professor Hudson and thought by him to be of little importance. It is pointed out that saluting officers, standing retreat and many other military forms are observed at military colleges and to some extent in ROTC units.

III. The language of our statute herein involved is also quite indicative of what is intended. The exemption is quite evidently meant to benefit those who have been in the military or naval service, but have been in some manner released or terminated therefrom. Plaintiff does not contend that he is now a soldier, but only that he was so during a part of the period of the second world war. The statute recognizes certain situations which change the status from that of a present soldier to that of a former soldier. Thus one who has been a soldier and who has been honorably separated, retired, furloughed to a reserve, placed on inactive status, or discharged may claim the exemption. Im-

plicit in the statute is the thought that one who is "placed on inactive status" is no longer a soldier. But if one who is "placed on inactive status" is not a soldier, then one who never progressed beyond inactive status never was a soldier, within the meaning of the statute. This answers the contention of the plaintiff that even if he was never in fact a soldier on active duty he is nevertheless covered by the terms of the statute. We think it also greatly strengthens the thought that it is the determination of the United States Army as to status which to a considerable extent governs our own statute on exemptions to soldiers. The statute refers to "soldiers"; but the only soldiers who took part in the second world war were those so made by the federal authorities, and we must assume the legislature had this knowledge, and meant to refer to those citizens of Iowa who became soldiers under the laws, rules and regulations of the United States Government.

■ IV. There is some indication the plaintiff himself did not feel that he was at all times a soldier in the fullest sense of the definition. A soldier is ordinarily not free to choose whether he will go to a certain place, or obey certain rules and procedures.

During the time he was under the jurisdiction of the CAA plaintiff appears to have assumed he was free to choose what his future course should be. At least, we find he wrote to one George Gruen, Regional Airman Procurement Supervisor, under date of September 4, 1943, asking for advice as to whether he should fly his flight instructor's test "here" or at Randolph Field. He told Mr. Gruen he would by the end of the month be "in a position to accept assignment to Randolph, or employment elsewhere, whichever you elect * * *." He also said "I am still willing to go to Randolph, if you feel I should." Mr. Gruen replied in the same vein, advising it would be to plaintiff's advantage to secure his instructor's rating before going to Randolph Field, and asking "please advise whether you wish to be included in the September quota which will report to Randolph Field approximately September 30." These letters were written, of course, before plaintiff went to Brooks and Randolph Fields.

His attitude even after arriving at Randolph Field is shown by a letter written by him to one John P. Morris of the CAA on

February 4, 1944, after his release. Apparently plaintiff had been dissatisfied with an instructor, an Army Air Force lieutenant at Randolph. He says he went to a superior officer, a captain, and requested a change of instructors, "advising him 'if that cannot be arranged, I wish to be terminated immediately.' * * *

"Capt. Caton was somewhat inclined to pooh-pooh and sneer at the whole thing, and I was unquestionably a bit abrupt in telling him that I didn't care what he thought about it—if what I had been through was a sample of correct flying, I was through with flying the rest of my life, and that in my opinion anyone who would do such things was a G———— D———— fool.''

These are not the words of a soldier to his superior officer. While the plaintiff may have been merely heedless of consequences, the more likely explanation seems to be that he—and apparently the captain as well—did not consider that he was as yet a part of the Army. His statement that he would "wish to be terminated immediately" if not given a change of instructors is hardly a request that a soldier in his right mind would make with any hope of success, and the strong language at the close of the quote above would surely have earned a soldier at least a reprimand if not some more salutary form of discipline. Yet plaintiff says he was never disciplined.

Without doubt, plaintiff made a sincere, patriotic and energetic effort to enter the armed forces. He was motivated by a desire to be of aid to his country in its time of need, and he made some considerable sacrifices. Unfortunately, the tax exemption provided by section 427.3 (4), supra, is not given as a reward for patriotic motives, but for service in the armed forces in time of war. Plaintiff has failed to show he is clearly within the letter and spirit of the terms of the exemption law. At best, he occupied an uncertain and nebulous status. Perhaps he was not a civilian, quite possibly he was a reservist in training who had not been called into the active forces of the Army. But we cannot say upon the record here he was a soldier beyond any fair doubt, within the meaning of the exemption statute.

We find no error in the rulings and judgment of the trial court.—Affirmed.

All JUSTICES concur.