559 P.2d 420

**Kenneth J. STOHR, Appellant,**

v.

**NEW MEXICO BUREAU OF REVENUE, Appellee.**

No. 2591.

Court of Appeals of New Mexico.

Nov. 30, 1976.

Certiorari Denied Jan. 25, 1977.

William C. Erwin, Kastler, Erwin & Davidson, Raton, for appellant.

Toney Anaya, Atty. Gen., Vernon O. Henning, Bureau of Revenue, Legal Div., Santa Fe, for appellee.

OPINION

LOPEZ, Judge.

Stohr protested assessments for gross receipts taxes, penalty and interest. The protest of assessments for purchases of materials was denied by the bureau of revenue. The protest of assessments for wages was partially denied. Stohr appeals the decision and order of the commissioner of revenue

directly to this court. Section 72–13–39, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp. 1975). We affirm in part and reverse in part.

Stohr is a skilled union carpenter in Raton, New Mexico. He had been doing carpentry work for several years and, during the taxable period, performed carpentry work for over one hundred people. For convenience we will refer to these people as customers. He was paid by the hour. On a few jobs the customer would deduct Federal Insurance Contribution Act (F.I.C.A.) taxes. When customers did not deduct F.I.C.A. taxes, Stohr would file self-employment returns. Often, Stohr would purchase materials for a particular job; subsequently, he was reimbursed by the customer. The relevant findings of the commissioner are:

"  .   .   .

"4. During the taxable period the Taxpayer was engaged by over 100 persons   .   .   .   to perform carpentry work on buildings such as houses, garages and office buildings. This work included installing new window frames, room paneling, cabinets and garage doors.

"5. The Taxpayer was engaged by customers for a specific job e. g., install new paneling in a room. Generally, the Taxpayer determined when he would perform the job. Some jobs were performed in a few hours; others lasted considerably longer. The Taxpayer did not advertise himself as a contractor in any media; satisfied customers passed the word. In no case did the Taxpayer enter into written contracts with his customers.

"6. In most, but not all, cases the Taxpayer purchased in his own name the construction material necessary for the job and the Taxpayer paid the suppliers for the material although in some cases customers would pay the suppliers for materials purchased by the Taxpayer. In some cases customers themselves purchased the material in which case the customer paid the supplier. The Taxpayer apparently never delivered nontaxable transaction certificates to suppliers and all sales of material by suppliers were made with tax passed on to the purchaser.

"7. The Taxpayer was always paid for hours worked plus the Taxpayer's cost of material. The Taxpayer maintained a day book which reflected payments received, which included the labor element, (hours worked times the hourly rate) and the material purchased by the Taxpayer for the job. The tax assessment in question was based on the information in the day book.

"8. Several customers withheld federal income tax, state income tax and FICA (social security) taxes with respect to the payments attributable to the labor charges. The vast majority of customers did not withhold any taxes on payments made to the Taxpayer.

"  .   .   .

"12. During the taxable period the Taxpayer did not have a New Mexico contractors license. For the past eight years the Taxpayer has filed gross receipts tax returns with the Bureau but such returns showed no taxable receipts. The Taxpayer filed self employment tax returns (for social security purposes) with Internal Revenue Service where customers did not withhold FICA tax. The Bureau audit report indicates that the Taxpayer filed federal income tax returns, including federal Schedule 'C's', which indicated that the Taxpayer received amounts from a business or profession. The Taxpayer is not familiar with federal tax procedures and such returns were prepared by the Taxpayer's wife.

"  .   .   .

"14. It seems apparent that a person, such as the Taxpayer, could in some contractual relationships, be an employee within the meaning of § 72–16A–12.5, and in other arrangements the person could be an independent contractor. In this connection it appears the Bureau treated payments made to the Taxpayer by Northeastern Fair Association as wages, and not as taxable receipts, although the Taxpayer apparently per-

formed carpentry services for that customer. A customer, Paul Kastler, testified at the hearing about his relationship with the Taxpayer: that he told the Taxpayer when to perform the work; that he obtained liability insurance on the Taxpayer; that he withheld federal taxes on payments made to the Taxpayer; that he often directly purchased material; that on one occasion he terminated a project prior to completion; and that he exercised control over the Taxpayer.

"15. For purposes of the Federal Insurance Contributions Act (FICA), § 3121(d)(2) of the 1954 Internal Revenue Code (as amended) defines 'employee' to include 'any individual who, *under the usual common law rules* applicable in determining the employer-employee relationship has the status of an employee'. (Emphasis added) Where such a relationship exists, federal law imposes a tax on both employees (§ 3101 of the Internal Revenue Code) and employers (§ 3111 of the Internal Revenue Code). Where a customer accepts an economic burden by paying the portion of the employer's FICA tax, there is an inference that the customer does so because under the law, he is required to do so. While affirmative evidence of withholding FICA is not determinative, it is evidence to be considered. As indicated above, it is recognized that in some contractual relationships, the Taxpayer could be an employee. The Bureau audit report . . . lists the name of customers (including Mr. Kastler) who withheld FICA from payments made to the Taxpayer. It is concluded that at least those receipts . . . are exempt under § 72–16A–12.5."

*Wages*

Stohr argues he was an "employee" and that compensation paid to him by customers were wages, therefore exempt under § 72–16A–12.5, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp.1975):

"Exempted from the gross receipts tax are the receipts of employees from wages, salaries, commissions or from any other form of remuneration for personal services."

Stohr relies on the Gross Receipts and Compensating Tax Act Regulations of the bureau which defines an employee as follows:

"G.R. REGULATION 12.5–1—EMPLOYEE DEFINED—

"In determining whether a person is an employee, the bureau will consider the following indicia:

"(1) is the person paid a wage or salary;

"(2) is the 'employer' required to withhold income tax from the person's wage or salary;

"(3) is F.I.C.A. tax required to be paid by the 'employer' and employee;

"(4) is the person covered by workmen's compensation insurance;

"(5) is the 'employer' required to make unemployment insurance contributions on the person;

"(6) does the person's 'employer' consider the person to be an employee;

"(7) does the person's 'employer' have a right to exercise control over the means of accomplishing a result or only over the result (control does not mean 'mere suggestions').

"If all of the indicia mentioned above are present, the bureau will presume that the person is an employee. However, a person may be an employee even if one or more of the indicia are not present."

The issue is whether Stohr was an employee on the approximately "fifty to one hundred and fifty" jobs completed during the taxable period from January 1, 1972, to July 31, 1975. The commissioner found that on the majority of jobs Stohr was an independent contractor. The commissioner determined under finding number 15 that on those jobs where the customer deducted F.I.C.A. taxes, Stohr was an employee and his compensation was exempt as wages. On the jobs where no deductions were made, the commissioner determined that he was an independent contractor and liable for payment of gross receipt taxes. The commissioner based his decision on § 72–

16A–3 E and F, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp.1975).

"E. 'engaging in business' means carrying on or causing to be carried on any activity with the purpose of direct or indirect benefit;

"F. 'gross receipts' means the total amount of money or the value of other consideration, received from selling property in New Mexico, from leasing property employed in New Mexico or from performing services in New Mexico. . ."

■ This Court must determine whether the findings of the commissioner were in accordance with law and supported by substantial evidence, or whether the findings were capricious and arbitrary. Section 72–13–39 D, supra. Stohr acknowledges the presumption that an assessment of gross receipts taxes is correct. Section 72–13–32 C, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp. 1975); *Mears v. Bureau of Revenue,* 87 N.M. 240, 531 P.2d 1213 (Ct.App.1975). In order for the taxpayer to be successful, he must clearly overcome this presumption. See *Archuleta v. O'Cheskey,* 84 N.M. 428, 504 P.2d 638 (Ct.App.1972). Moreover, where an exemption is claimed, the exemption is strictly construed in favor of the taxing authority. *Rock v. Commissioner,* 83 N.M. 478, 493 P.2d 963 (Ct.App.1972).

Of the seven indicia of employee status outlined in G.R. Regulation 12.5–1, supra, only three are present in this case. Although there is no dispute that Stohr was paid an hourly wage, there is conflicting evidence whether Stohr's "employers" considered him an employee. There is also a factual dispute whether the "employers" had the right to exercise control over the means of accomplishing a result. There is no dispute that in most of the jobs the "employer" did not withhold income tax, did not pay the employer's share of F.I.C.A. taxes, and did not make unemployment insurance contributions. Most of the time Stohr was not covered by workmen's compensation insurance.

■ On the jobs where the employer was sophisticated enough to make provisions for F.I.C.A. contributions, the employer was likely to withhold income tax, make unemployment insurance contributions, and provide workmen's compensation insurance. This was true of one principal witness, attorney Paul Kastler. On the jobs found taxable as gross receipts, Stohr paid both the employer's and employee's share of F.I.C.A. taxes, and filed federal tax returns showing income from a business or profession. Therefore, it is reasonable to include in gross receipts the jobs on which F.I.C.A. taxes were not paid.

■ We recognize that the bureau's regulation is not controlling, but it does provide a useful checklist. The dispositive findings are: (1) the taxpayer filed self-employment returns with the Internal Revenue Service for social security purposes where customers did not withhold F.I.C.A. taxes; (2) the taxpayer filed federal income tax returns which reported income from a business or profession; and, (3) the large number of "employers" indicates that the relationship with "customers" cannot be classified along traditional or conventional employer-employee lines. Cf. *Burton v. Crawford,* 89 N.M. 436, 553 P.2d 716 (Ct. App.1976). See also *Albuquerque Lumber Co. v. Bureau of Revenue,* 42 N.M. 58, 75 P.2d 334 (1938). The controlling factor, however, is that the taxpayer must treat transactions uniformly for all purposes within the tax laws. The taxpayer must not attempt to show one scheme for federal tax purposes, and a nontaxable event for purposes of state gross receipts tax. *Co-Con, Inc. v. Bureau of Revenue,* 87 N.M. 118, 529 P.2d 1239 (Ct.App.1974). See also *Mears v. Bureau of Revenue,* supra.

We believe that the bureau's findings were correct; they were supported by substantial evidence, were in accordance with law and not an abuse of discretion. *Duke v. Bureau of Revenue,* 87 N.M. 360, 533 P.2d 593 (Ct.App.1975).

*Purchases of materials*

■ Stohr argues he was acting as an agent for customers when he would order,

buy, or come into possession of materials which he would use for different jobs. We agree.

Section 72–16A–3 F, supra, states in pertinent part that:

" 'Gross receipts,' for the purposes of the business of buying, selling or promoting the purchase, sale or leasing, as factor, agent or broker, on a commission or fee basis, of any property, service, stock, bond or security, includes only the total commissions or fees derived from the business. . . ."

This means that the only amount properly includable in gross receipts is the commissions or fees derived. Stohr did not receive any commissions or fees, but acted merely as an agent for his customers. Stohr's purchases were erratic; sometimes the customer had the materials on hand, sometimes the customers purchased the materials, sometimes Stohr purchased the materials as a favor to the customer. It cannot be said that Stohr was in the business of buying and selling materials. He never advertised as such, and never sought any benefit from his purchases other than to expedite his work. Stohr always paid gross receipts tax to the supplier, and this tax was paid by the ultimate consumers, his customers. The purchases were merely incidental to his work as a carpenter. Cf. § 72–16A–12.16, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp.1975).

Although the taxpayer did not make a profit, profit is immaterial and not conclusive. *New Mexico Enterprises, Inc. v. Bureau of Revenue*, 86 N.M. 799, 528 P.2d 212 (Ct.App.1974). But see § 72–16A–3 B, supra, " 'buying' or 'selling' means any transfer of property for consideration or any performance of service for consideration. . . ."

We believe that the findings of the commissioner, with regard to materials, were not supported by substantial evidence.

*Penalty*

█ Stohr argues that a penalty was improperly assessed. We believe that he is not liable for penalty and interest pursuant to § 72–13–82, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp.1975):

"*Civil penalty for failure to pay tax or file a return.* A. In the case of failure, due to negligence or disregard of rules and regulations, but without intent to defraud, to pay when due any amount of tax required to be paid or to file a return regardless of whether or not any tax is due, there shall be added to the amount two per cent [2%] per month or a fraction thereof from the date the tax was due or from the date the return was required to be filed, not to exceed ten per cent [10%] thereof, or a minimum of five dollars ($5.00), whichever is greater, as penalty, but the five dollar ($5.00) minimum penalty shall not apply to taxes levied under the Income Tax Act [72–15A–1 to 72–15A–15].

"B. In the case of failure, with intent to defraud the state, to pay when due any amount of tax required to be paid, there shall be added to the amount fifty per cent [50%] thereof, or a minimum of twenty-five dollars ($25.00), whichever is greater, as penalty."

This section is divided into two parts: penalty for fraud and penalty for negligence. We do not believe that there is evidence of fraud nor do we believe that failure to pay comes under Section A, supra. Diligent protest by the taxpayer negates the possibility of negligence. The taxpayer did not disregard the rules and regulations because there was reasonable doubt as to the correctness of the taxes imposed by the commissioner. *Co-Con, Inc. v. Bureau of Revenue*, supra.

The decision of the commissioner is affirmed in part and reversed in part and remanded for proceedings consistent with this opinion.

IT IS SO ORDERED.

SUTIN and HERNANDEZ, JJ., concur.