760 P.2d 1306

**SECURITY ESCROW CORPORATION and First Escrow, Inc., New Mexico Corporations, Plaintiffs–Appellees,**

v.

**STATE of New Mexico TAXATION AND REVENUE DEPARTMENT, Defendant–Appellant.**

No. 10089.

Court of Appeals of New Mexico.

Aug. 2, 1988.

J. Stephen Gammill, Alice Tomlinson Lorenz, Miller, Stratvert, Torgerson & Schlenker, P.A., Albuquerque, for plaintiffs-appellees.

Hal Stratton, Atty. Gen., Louhannah M. Walker, Daniel Yohalem, Carolyn A. Wolf,

Sp. Asst. Attys. Gen., Taxation and Revenue Dept., Santa Fe, for defendant-appellant.

## OPINION

APODACA, Judge.

The State of New Mexico Taxation and Revenue Department (Department) appeals from the trial court's judgment and order granting plaintiffs' (taxpayers) application for a tax refund. Two issues are raised by the Department: (1) whether basic real estate contracts constitute loan transactions, such that receipts from charges for handling payments made under the contracts may be deducted from taxpayers' gross receipts; and (2) whether the trial court erred in granting summary judgment in favor of taxpayers and denying the Department's own motion for summary judgment. We hold that such real estate contracts do not constitute loan transactions under the specific statutory provision allowing deductions from gross receipts. We reverse the trial court and remand the case with directions that an order be entered granting the Department's summary judgment motion.

Taxpayers filed an application for tax refund for the alleged overpayment of gross receipts taxes, pursuant to NMSA 1978, Section 7–1–26(A) (Repl.1986). They, as escrow agents, processed installment payments paid on various real estate contracts held in escrow by taxpayers. It is the charges collected by them for handling these payments that are the subject matter of this appeal. The Department denied the refund, and taxpayers filed a complaint in the trial court pursuant to Section 7–1–26(A)(2). The trial court found that no genuine issues of material fact existed and that taxpayers were entitled to judgment as a matter of law. Judgment was thus entered in favor of taxpayers in the amount of $91,727.00, plus interest. The Department appeals from that judgment.

Taxpayers base their claim for refund on the language of NMSA 1978, Section 7–9–61.1 (Repl.1986), which allows the deduction of receipts from charges made in connection with a loan or made for handling loan payments when computing the gross receipts tax. The Department denied taxpayers' claim, contending that an estimated ninety percent of their receipts were for charges made in connection with payments on the subject contracts and that such transactions did not qualify as "loans" for gross receipts tax purposes. The Department, however, did refund gross receipts taxes paid on receipts from charges for handling payments on mortgages, notes, and deeds of trust. Thus, the amount of tax at issue is based upon gross receipts derived solely from the handling of the real estate contract payments.

The parties apparently do not differentiate between the specific contracts; instead, they desire that we determine whether real estate contracts, in general, constitute loan transactions. However, although standard real estate contract "forms" are available to the public, the real estate contract is a flexible legal instrument and may contain any pertinent provisions the contracting parties consider necessary or desirable. *See* L. Buchmiller, *Real Estate Contracts in New Mexico* §§ 1.02 & 1.14 (1985). None of the real estate contracts were introduced into evidence and thus are not included in the record on appeal.

Section 7–9–61.1 provides: "Receipts from charges made in connection with the origination, making or assumption of a loan or from charges made for handling loan payments may be deducted from gross receipts." It is necessary to define the term "loan." The Department contends that the plain language of the statute indicates its purpose is to provide a deduction for handling loan payments under loan transactions involving borrowers and lenders in which a sum of money is delivered under a contract to return an equivalent amount at some future time. The Department further asserts that real estate contracts do not constitute *loan* transactions involving borrowers and lenders but are installment

sales agreements involving buyers and sellers in a credit *sale.*

In construing the meaning of a particular statute, a reviewing court's central concern is to determine and give effect to the intention of the legislature. *State ex rel. Klineline v. Blackhurst,* 106 N.M. 732, 749 P.2d 1111 (1988). In determining this intent, we look primarily to the language of the act and the meaning of the words, and when they are free from ambiguity, we will not resort to any other means of interpretation. *See State v. Pitts,* 103 N.M. 778, 714 P.2d 582 (1986); *New Mexico Beverage Co. v. Blything,* 102 N.M. 533, 697 P.2d 952 (1985).

When a term is not defined by the statute, a court may interpret the word in accordance with its ordinary meaning. *United States v. State of New Mexico,* 536 F.2d 1324 (10th Cir.1976). Unless the legislature indicates a different intent, we must give statutory words their ordinary meaning. *State ex rel. Klineline v. Blackhurst.* Although we cannot add a requirement that is not provided for in the statute or read into it language that is not there, we do read the act in its entirety and construe each part in connection with every other part to produce a harmonious whole. *Id.*

Where an exemption or deduction from tax is claimed, the statute must be construed strictly in favor of the taxing authority, the right to the exemption or deduction must be clearly and unambiguously expressed in the statute, and the right must be clearly established by the taxpayer. *Chavez v. Commissioner of Revenue,* 82 N.M. 97, 476 P.2d 67 (Ct.App. 1970); *see also Pittsburgh & Midway Coal Mining Co. v. Revenue Div., Taxation & Revenue Dep't,* 99 N.M. 545, 660 P.2d 1027 (Ct.App.), *appeal dismissed,* 464 U.S. 923, 104 S.Ct. 323, 78 L.Ed.2d 296 (1983); *Stohr v. New Mexico Bureau of Revenue,* 90 N.M. 43, 559 P.2d 420 (Ct.App.1976); *Reed v. Jones,* 81 N.M. 481, 468 P.2d 882 (Ct. App.1970).

Once it is determined that a tax is applicable, after allowing for any statutory deduction, the statute permitting the deduction must be narrowly, yet reasonably construed. *Chavez v. Commissioner of Revenue.* "A tax statute must also be given a fair, unbiased, and reasonable construction, without favor or prejudice to either the taxpayer or the State, to the end that the legislative intent is effectuated and the public interests to be subserved thereby are furthered." *Id.* 82 N.M. at 99, 476 P.2d at 69.

Thus, taxation is the rule and the claimant for an exemption must show that his demand is within the letter as well as the spirit of the law. *Jones v. Iowa State Tax Comm'n,* 247 Iowa 530, 74 N.W.2d 563 (1956). *See generally* 3A N. Singer, *Sutherland Statutory Construction* § 66.09 (Sands 4th ed. 1986).

Although some of the cases cited, *see, e.g., Chavez v. Commissioner of Revenue,* refer to "construction" when ordinarily we speak of rules of construction in connection with ambiguity, we believe there is a difference between interpretation and construction that is relevant in this case. In "interpreting" a document or statute, courts are trying to decide what the words chosen by the author or legislature *mean.* In "construing" a document or statute, courts are applying principles of *preferred meaning,* because the meaning cannot otherwise be ascertained. *Cf.* T. Atkinson, *Law of Wills* § 146 at 809 (2d ed. 1953) ("construction is necessary only when interpretation fails").

With these principles in mind, our analysis involves the following steps: (1) because the statute does not include a definition of the relevant terms, this court may interpret the words in accordance with their ordinary meaning; (2) in interpreting the words in accordance with their ordinary meaning, and in the absence of cases from this state, we can look to cases from other jurisdictions and from model statutes for guidance; (3) the definition found in these authorities supports the Department's position that a loan is distinguishable from a

credit sale; (4) in applying the statute, we observe the rules that the taxpayer must establish a right to an exemption or deduction and that a statute establishing an exemption or deduction is to be narrowly construed; and (5) we must then decide whether the phrase "charges made for handling loan payments" as used in Section 7–9–61.1 encompasses the charges made by taxpayers in connection with installment payments on real estate contracts held in escrow.

The legislature, in enacting Section 7–9–61.1, did not expressly define the terms "loan" or "loan payments," and the disposition of this appeal consequently turns on the ordinary meaning of those terms.

In interpreting the statute, "loan" is the critical term. We believe this term has a well-accepted meaning. *Webster's Third New International Dictionary* 1326 (1966) defines "loan" as "something lent for the borrower's temporary use on condition that it or its equivalent be returned." Case law has defined a loan as a delivery of a sum of money to another under a contract to return at some future time an equivalent amount with or without an additional amount agreed upon for its use. *Boerner v. Colwell Co.*, 21 Cal.3d 37, 145 Cal.Rptr. 380, 577 P.2d 200 (1978) (in bank); *Kline v. Robinson*, 83 Nev. 244, 428 P.2d 190 (1967), *overruled on other grounds, Pease v. Taylor*, 88 Nev. 287, 496 P.2d 757 (1972). *See generally Verbeck v. Clymer*, 202 Cal. 557, 261 P. 1017 (1927) (contract for sale of land, providing for monthly payments covering a period of fifteen years, being a bona fide sale and purchase of real property where vendor retained title, held not a "loan" within the meaning of usury law); *Petersen v. Philco Fin. Corp.*, 91 Idaho 644, 428 P.2d 961 (1967) (bona fide sale of property under a contract providing for payment of the purchase price, in whole or in part, in the future, in one or more installments, is in no sense a "loan," and usury statute has no application to such sales).

■ The four elements of a loan are: (1) a principal sum; (2) a placing of the sum with a borrower; (3) an agreement that interest is to be paid; and (4) a recognition by the receiver of money of his liability for return of the principal amount with accrued interest. *McLendon v. Johnson*, 71 Ga.App. 424, 31 S.E.2d 89 (1944). In a loan, the initial transaction creates a debit and credit relationship that is not terminated until replacement of the sum borrowed with agreed interest. *Kline v. Robinson.* A sale, on the other hand, is the transfer of the property or a thing for a price in money. *Id.*

In L. Buchmiller, *supra*, at § 1.01, a real estate contract is defined as a "legally enforceable agreement by which an owner of real property agrees to sell, and a purchaser agrees to buy the property on a *deferred payment arrangement.*" (Emphasis added.) Moreover, *Black's Law Dictionary* 717 (5th ed. 1979) defines "installment land contract" as a "[t]ype of contract by which [the] buyer is required to make periodic payments towards purchase price of land and only on the last payment is the seller required to deliver a deed." These definitions do not define a real estate contract in terms of a loan or a lending transaction.

Additionally, the Uniform Consumer Credit Code, 1974 Act, Section 1.301(25), 7A U.L.A. 46 (1985) states that a loan includes:

(i) the creation of debt by the lender's payment of or agreement to pay money to the debtor or to a third person for the account of the debtor;

(ii) the creation of debt pursuant to a lender credit card * * *;

(iii) the creation of debt by a cash advance to a debtor pursuant to a seller credit card;

(iv) the creation of debt by a credit to an account with the lender upon which the debtor is entitled to draw immediately; and

(v) the forbearance of debt arising from a loan.

The Code further states that a loan does not include the "forbearance of debt arising from a sale or lease."

These authorities support the Department's position that the phrase "charges made for handling loan payments," as used in Section 7–9–61.1, does not encompass the charges made by taxpayers for their escrow services in connection with installment payments on real estate contracts. When the key terms are interpreted according to their ordinary meaning, we then apply the statute in accordance with the rules that the taxpayers must establish their right to an exemption or deduction and that the relevant statute is to be narrowly and reasonably construed.

■■■■ We conclude that the legislature intended to allow the deduction from gross receipts under the statute only for typical loan transactions involving both a traditional lender and borrower. We necessarily conclude that the real estate contracts at issue in this appeal, or the installment payments made under them, were not intended by the legislature to come within the meaning of the terms "loan" or "loan payments," respectively. Under our reading of the statute, any processing or collection charges typically made by either independent escrow agents, or banks acting as escrow agents, are not properly deductible from gross receipts under the pertinent statute.

We believe that this interpretation and construction of Section 7–9–61.1 is both narrow and reasonable, *see Chavez v. Commissioner of Revenue*, and that as such, we are applying the statute in light of its purpose. *See Claridge v. New Mexico State Racing Comm'n*, 107 N.M. 632, 763 P.2d 66, (App.1988). Our interpretation also follows the principles stated in *Chavez*, that when a deduction is claimed by a taxpayer, the statute is to be strictly construed in favor of the taxing authority, and the right to the deduction must be clearly and unambiguously expressed. Further, taxpayers did not clearly establish their right to the deduction. *See Chavez v. Commissioner of Revenue*.

To hold otherwise would in effect unfairly eliminate payment of gross receipts tax by escrow businesses throughout New Mexico for gross receipts derived from charges similar to those at issue in this case. We do not believe that result was the intent of the legislature. Additionally, if we were to construe the statute as urged by taxpayers, we would in essence be deferring substance to form, thus encouraging escrow agents or the parties under any real estate contract to adopt certain contractual language making the transaction appear as a loan when in substance it is not. The sole purpose of such manipulative wording would be to improperly permit a deduction from gross receipts under the statute. Likewise, we believe this circumvention would open a floodgate to needless and possibly endless litigation with respect to whether a real estate contract was, in addition to being a sale, also a loan transaction.

In summary, we conclude that the subject real estate contracts do not constitute loan transactions qualifying taxpayers for deductions under Section 7–9–61.1. We hold that the trial court erred in granting summary judgment to taxpayers and denying the Department's motion for summary judgment.

We reverse and remand the case with directions that the trial court enter an order granting the Department's summary judgment motion and revoking its previous order granting taxpayers' own motion. The Department is awarded its costs on appeal.

IT IS SO ORDERED.

BIVINS and MINZNER, JJ., concur.